(34 Misc. Rep. 629.)

## LANGAN v. AMERICAN LEGION OF HONOR.

(Supreme Court, Trial Term, Kings County. April, 1901.)

1. BENEFIT ASSOCIATION—CHANGE OF CONTRACT—VALIDITY.

In a contract between a benefit order and a member, where power to alter it in substance has not been reserved either in the act under which the order was incorporated, its constitution and by-laws, or the application for membership, a subsequent by-law reducing the face of the certificate is void, and a breach of the contract, for which the benefit order is liable.

2. SAME—BY-LAWS—AMENDMENT.

Where a member of a benefit order agreed to comply with all laws that might thereafter be adopted, such agreement did not permit changes which would impair the substance of the benefit certificate.

3. SAME—BREACH OF CONTRACT—DAMAGES.

Where an agreement of a benefit company is broken by reduction of the face of the benefit certificate from $5,000 to $2,000, and the member is not reinsured or reinsurable, the measure of damages is the present value of the policy, less the present value of the assessments which the member would have had to pay had there been no breach.

Action by John T. Langan against the American Legion of Honor. Judgment for plaintiff.

The defendant is a fraternal mutual benefit corporation incorporated under the laws of the commonwealth of Massachusetts.   The plaintiff became a companion or member of it and received his benefit certificate on August

21, 1882. This certificate is that the plaintiff is received as a member of De Long Council No. 986, and as a "sixth degree contributor to the benefit fund of this order," and "upon condition that the said companion complies in the future with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern said council and fund." The conditions being complied with, the defendant agrees to pay to the plaintiff's wife $5,000 upon his death "out of its benefit fund." In his application for companionship the plaintiff agrees to pay all dues and assessments, "and to conform in all respects to the laws, rules and usages of the order now in force, or which may hereafter be adopted by the same." When the plaintiff became a companion the by-law of the order in respect of the degrees of members and the sums to be paid on their death was as follows:

"Five thousand dollars shall be the highest amount paid by this order on the death of a member. This sum shall be paid on the death of every sixth degree member, and four thousand dollars on the death of every fifth degree member, three thousand dollars on the death of every fourth degree member, two thousand dollars on the death of every third degree member, one thousand dollars on the death of every second degree member and five hundred dollars on the death of every first degree member; provided, however, that should a death occur when one assessment on each member would not amount to five thousand dollars, then the sum paid shall be a proportionate amount of one assessment on each member in good standing in the order at the date of death, according to the degree of the deceased member, and such amount shall be all that can be claimed by any one."

In 1893 this by-law was amended so as to make $3,000 the highest sum paid, and the other sums $2,000 and $1,000; with a proviso, however, that nothing contained in the amended by-law should be "construed to in anywise impair the obligation of any benefit certificate heretofore issued for a larger or smaller amount."

In 1897 it was again amended by adding a $500 membership, with the same proviso.

In 1899 it was again amended so as to make $2,000 the highest sum paid, and the other sums $1,000 and $500, with the same proviso.

In 1900 the said by-law as so amended was amended to be as follows, the said proviso being omitted, viz.:

"Two thousand dollars shall be the highest amount paid by the order on the death of a member, upon any benefit certificate heretofore or hereafter issued. This sum shall be paid on the death of every member holding a benefit certificate of two thousand dollars or over; and one thousand dollars on the death of every member holding a benefit certificate for that amount; and five hundred dollars on the death of every member holding a benefit certificate for that amount, provided, that if at the death of said member one full assessment upon each of the members of the order will not amount to the full sum of two thousand dollars, then the amount to be paid to the beneficiaries of said deceased member shall not exceed the amount collected by said assessment, if said member's benefit certificate is for two thousand dollars; one-half of the amount if the benefit certificate is for one thousand dollars; and one-quarter of the amount if the benefit certificate is for five hundred dollars. And, provided, that the face value of the benefit certificate shall be paid so long as the emergency fund of the order has not been exhausted. And, provided, that the said member shall at the time of death be a member of the order in good standing, and shall have complied with all the laws, rules and regulations of the order, as they now are, or as they may hereafter from time to time be altered or amended."

There was when the plaintiff became a member a by-law simply that the by-laws could be "altered or amended" by the supreme council.

F. A. Ward, for plaintiff.
Alfred J. Carr, for defendant.

GAYNOR, J. The contract between the plaintiff and the defendant consisted of the statute under which the order is incorporated,

the application for membership, the benefit certificate issued there-
on, and the constitution and by-laws of the defendant. Such con-
tract could not be changed unless the power to do so was reserved.
This rests on principles too familiar to call for citation of authority.
I find in the contract no such reservation. The agreement by the
plaintiff in the application for membership, and in the benefit certifi-
cate, to comply with all laws that might thereafter be adopted, as
well as the power reserved in the by-laws to change them, had refer-
ence to changes which should not impair the substance of the con-
tract. Nothing beyond this will be implied on the theory that it is
reasonable. The amended by-law of 1900 abrogates the contract to
pay $5,000 and substitutes an obligation to pay only $2,000, and is
therefore void. Weiler v. Aid Union, 92 Hun, 277, 36 N. Y. Supp.
734; Parish v. Produce Exchange, 54 App. Div. 323, 66 N. Y. Supp.
613; Kent v. Mining Co., 78 N. Y. 159.

Some opinions of judges seem to say (strangely enough, as it would
seem) that a by-law changing the contract, where no such power was
reserved, is unreasonable and therefore void. I do not understand it
to be a question of reasonableness at all, but of power. If the power
sought to be exercised to change the contract was not reserved, its
exercise cannot be called reasonable. I therefore cannot consider
the evidence given for the defendant to show the wisdom, reasonable-
ness or even necessity of the new by-law by reason of the declining
membership of the order.

When the decisions in this state in respect of the measure of dam-
age in a case like this are read closely, they will be found to have set-
tled upon no rule, though there are unauthoritative suggestions on
the subject in the opinions. People v. Security Life Ins. Co., 78 N.
Y. 114, 34 Am. Rep. 522; In re Guardian Mutual Life Ins. Co., 82 N.
Y. 336; Speer v. Insurance Co., 36 Hun, 322; Farley v. Insurance Co.,
41 Hun, 303; Skudera v. Insurance Co., 17 Misc. Rep. 367, 39 N. Y.
Supp. 1059. They all agree, however, that such measure is not the
assessments or premiums paid. In actions for damages for breaches
of contract generally after a part performance, as in building con-
tracts, for instance, the plaintiff cannot recover back the installments
paid, but his measure of damage is the amount in excess of the con-
tract price, if any, which it would cost to complete. He cannot in
justice get back what he has paid for work already done, for he has
the benefit of it. The same reason is applicable to contracts for in-
surance, for up to the time of the breach the insurer has undergone
the risk and the insured has had the benefit of it for the premiums
which have been paid. If the plaintiff had insured himself for the
same amount on the breach in some other organization or company,
then his damage would be the present value of the excess in premiums
which he would have to pay in the future to keep his insurance good,
over the assessments or premiums he would have paid to the defend-
ant except for the breach. But as he has not so reinsured, I do not
see how that rule can be adopted. He may no longer be insurable,
and there can be no presumption that he is; the known infirmities
and uncertainties of health brought by advancing years forbid it.
Nor does it seem that a court would take evidence in such a case on

the question whether the insured is in insurable health. It would be an uncertain and an unseemly contest, and very trying to the insured. The law would not subject him to such an ordeal for the sake of the insurer.

It seems to me that the obvious measure of damage is the value of the policy at the time of the breach, which in this case would be the present value of the $5,000 which the insurer was to pay on the plaintiff's death, less the present value of the assessments which the plaintiff would have paid in the future if there had been no breach. Both sides have adopted the Northampton mortality table, and based their briefs on it, and I therefore adopt it instead of a more modern table. By it the plaintiff had an expectancy of nine years of life at the time of the breach. On that basis the present value of $5,000 would be $2,959.50 (reckoning the compound discount at 6 per cent. per annum); and the present value of the said future assessments would be $1,453.54. The difference, viz., $1,505.96, would be the plaintiff's damage. In arriving at this result such future assessments were taken at $201.60 a year, for the reason that the assessments amounted to that sum during the last year before the breach. The defendant contends that that sum cannot be taken for the reason that it is a matter of uncertainty, or of speculation, whether the amount of the assessments would not have increased. That is true; but the answer is that the defendant by its wrongful breach of the contract put the plaintiff in that evil case, and therefore in order that he may not go without justice, the law takes the best data the case is capable of, as it does in other cases.

The evidence shows that to insure himself in a solvent company at the time of the breach would have cost the plaintiff an annual premium of $235. If the measure of damage had to be taken as the difference between the present value ($1,694.35) of the premiums which would be thus paid, and the present value ($1,453.34) of the assessments the plaintiff would have had to pay in the future if there had been no breach, the amount of damage would be only $240.81.

If the measure of damage had to be taken as the difference between the present value of $5,000 ($2,959.50), and the present value of the said premiums necessary to insure in a solvent company ($1,-694.35), the amount of damage would be $1,265.15. The plaintiff's object was to secure a fund of $5,000 against his death. On the said breach happening he could by a present payment of the said sum of $1,694.35 to a solvent insurance company have secured such fund to be paid at his death. The present value of the said future fund would then have been $2,959.50; so that on this basis the value of the plaintiff's policy or benefit certificate was at the breach worth the said sum of $2,959.50, less the said sum of $1,694.35 necessary to be paid in order to mature it, viz., $1,265.15.

While I deem the rule of damage which I have adopted as the true one, let findings of fact be made on these other computations, so that if I have adopted the wrong rule the plaintiff may be required on appeal to consent to a reduction to avoid a reversal of the judgment.

Judgment for the plaintiff for $1,505.96, with interest.