(74 App. Div. 527.)

### BEACH v. SUPREME TENT KNIGHTS OF MACCABEES OF THE WORLD.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. DIRECTION OF VERDICT—EFFECT.

Where both parties moved for a directed verdict, and on denial of defendant's motion no request to go to the jury on any question of fact was made, the court's action in directing a verdict for plaintiff was equivalent to a finding of fact favorable to plaintiff, and conclusive if supported by any evidence.

2. MUTUAL BENEFIT ASSOCIATIONS—AMENDMENT OF CONSTITUTION—EFFECT.

Where an application for a beneficiary certificate in a mutual benefit association stated that the application, in connection with the constitution of the association, should form the basis of the contract, the rights of the beneficiary were subject to limitation by any subsequent reasonable amendment to the constitution.

3. SAME—REASONABLENESS.

A certificate in a mutual benefit association entitled the beneficiary to a cash payment of $1,000 in case of total "or" permanent disability. Eight years after the issuance of the certificate the constitution was amended so as to require the disability to be total "and" permanent, and to entitle the beneficiary only to annual payments of $100 for ten years. Held, that a finding that the amendment was unreasonable was justified.

4. SAME—INABILITY TO "DIRECT OR PERFORM" LABOR—CONSTRUCTION.

A mutual benefit certificate provided for the payment of a certain indemnity if beneficiary became totally disabled so as to be unable to "direct or perform" the kind of business or labor which he had always

followed. *Held*, that a beneficiary who customarily performed physical labor was entitled to the indemnity on being disabled from performing such labor though he was still able to direct it, the provision as to "directing" having reference only to those whose customary business consisted in giving direction.

Appeal from trial term, Cattaraugus county.

Action by Benjamin C. Beach against the Supreme Tent Knights of the Maccabees of the World. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, WILLIAMS, and HISCOCK, JJ.

James L. Quackenbush, for appellant.
George E. Spring, for respondent.

ADAMS, P. J.   The defendant is a fraternal and mutual benefit association, organized under the laws of the state of Michigan, the primary object of such association being the insurance of its members against death or accident. Its organization and the several branches thereof are called, respectively, supreme and subordinate tents. On the 8th day of March, 1887, the plaintiff made written application for membership to Center Tent, No. 28, of the association, located at Yorkshire Center, in the county of Cattaraugus. On the 17th day of April following such application was duly accepted, and upon the 25th day of the same month an endowment certificate of membership was issued to the plaintiff, by the terms of which he became a beneficiary of the order in good standing, and as such entitled to receive "the sum of two thousand dollars as a benefit to Sarah T. Beach, his wife, upon satisfactory proof of his death and the surrender of this certificate, provided he shall have in every particular complied with all the rules and regulations of the order." "In case of permanent or total disability, or upon attaining the age of seventy years, he shall be entitled to receive one-half of said endowment, as provided in the laws of the order." At the time the plaintiff's application was filed and the benefit certificate issued to him thereon, section 13 of article 4 of the defendant's endowment laws provided as follows:

"A member who by reason of a disability incurred after admission to endowment membership becomes unable to direct or perform the kind of business or labor which he has always followed, and by which alone he can thereafter earn a livelihood, shall be deemed entitled to disability benefits."

In May, 1895, the defendant's laws (which form its constitution) were so revised and amended as to provide that:

"Any member holding a benefit certificate who shall become totally and permanently disabled from any cause, not the result of his own illegal act, to perform or direct any kind of labor or business, * * * shall be relieved from the payment of further dues and assessments, and shall be entitled to receive from the disability fund, annually, one-tenth part of the sum for which his benefit certificate is issued."

At the time of entering into the contract in question the plaintiff was carrying on a farm of about 120 acres, as a tenant farmer, upon which there was a dairy of 13 or 14 cows, and he had been engaged in this business for several years prior to the accident hereinafter men-

tioned.   Incidentally he also operated a portable sawmill during about
three months in each year.   On the 13th day of November, 1895,
while engaged in operating this sawmill, he was accidentally thrown
upon the saw in such manner as to nearly sever his right arm between
the lower and middle thirds thereof.   His attending physician, Dr.
Krehbiel, thus described the injury which the plaintiff sustained:

> "He must have caught it on the top of the saw, and sawed all the tendons
> and muscles off on the front side and back side, and cut off the lower bone,
> and I should think about one-third of the upper bone here, and all the blood
> vessels and the nerves except a few on top here.   There is two branches
> of the main nerve; the lower one was severed.   The nerve supplying all the
> fingers was cut, causing the numbness.   The saw cut over an inch of that
> lower bone in length, and cut out from the muscle, so there was a great hole
> through here.   A bunch of pieces hung down,—flesh and cords and tissues;
> the cords for the fingers; all the tendons except a few, on top that supply
> the thumb.   The blood vessels were all cut.   The lower artery that supplies
> most of the hand was cut off.   They could not be joined together so it would
> restore it.   The injury destroyed the use of that hand entirely.   There is no
> feeling there except that it feels cold.   The circulation is much impaired by
> the injury to the artery.   Nerve supply is pretty much all destroyed and
> muscles cut off.   It always feels cold.   Cannot tell if he gets it on a hot
> stove.   This is the result of the injury.   The injury is permanent.   Can
> never get any better.   He cannot do anything with it.   It is right in the
> way; better be off."

It did appear, however, that after coming out of the hospital, and in
May or June after the accident, the plaintiff attempted to do some
work upon the farm and mill; that he fed his horses, handled a hay
fork, operated the lever in his mill with his left hand, and performed
such light duties as could be accomplished by the use of one hand;
but it also appears that he was obliged to employ an additional farm
hand, and to require much labor from his wife, which he had been ac-
customed to perform prior to his injury, such as milking cows, feeding
the cattle, etc.; and that ultimately he was compelled to give up farm-
ing and milling altogether.

Upon this state of facts the defendant refused to pay the indemnity
provided in the contract, placing its refusal upon the ground that by the
amended constitution of 1895 the plaintiff, in order to entitle himself
to such indemnity, must show that the disability caused by his injury
was both total and permanent in its nature, and that this he had failed
to do.   The case, therefore, presents for our consideration this ques-
tion:   Did the amendment to the defendant's constitution, adopted
some eight years after the plaintiff's contract had been entered into,
effect such a modification of that contract as will sustain the contention
which the defendant now makes?

Before entering into a discussion of this question, it may not be
amiss to refer to the fact that at the close of the evidence in the case
both parties moved for the direction of a verdict, and when the court
denied the defendant's motion for such direction no request was made
by its counsel to go to the jury upon any question of fact.   In these
circumstances it devolved upon the court to dispose of all questions of
fact, and, if in directing a verdict in favor of the plaintiff there was any
evidence to sustain the theory that the plaintiff's injury was total as
well as permanent, the defendant is concluded thereby.   Westervelt **v.**

Phelps, 171 N. Y. 212, 63 N. E. 962; Thompson v. Simpson, 128 N. Y. 270–283, 28 N. E. 627.

In the verified certificate of Drs. Krehbiel and Foster, attached to the notice dated September 15, 1897, which was put in evidence by counsel for the plaintiff, these physicians state that, after a careful examination of the plaintiff, they find him "totally and permanently disabled," and Dr. Krehbiel makes a statement to the same effect in a prior certificate signed by him on the 29th day of May, and upon the trial testified thereto with more particularity. Some evidence was also given by the plaintiff himself which might possibly warrant the finding that his injury had resulted in total disability. Inasmuch, however, as this point is not pressed upon our notice, it is perhaps better to consider the case along different lines. And, first, it is to be observed that the plaintiff's application and the certificate of membership issued thereon doubtless constitute the contract between the parties, and furnish the full measure of their contractual relations and obligations, inasmuch as the plaintiff in his application expressly stipulated that the statements therein contained, together with his application as a whole and the defendant's constitution, should form the basis of his contract of indemnity. In re Equitable Reserve Fund Life Ass'n, 131 N. Y. 354–369, 30 N. E. 114; People v. Masonic Guild & Mut. Ben. Ass'n, 126 N. Y. 615, 27 N. E. 1037. And if the plaintiff's rights and privileges as a member of the defendant's association are dependent in any measure upon the constitution of such association, it would seem to follow as a necessary corrollary that they would also be controlled and limited by any amendment which might thereafter be made thereto, provided such amendment be regularly and properly adopted, and provided also that the amendment thus adopted is a reasonable one. Kent v. Mining Co., 78 N. Y. 159–182; Ang. & A. Corp. § 347; Weiler v. Union, 92 Hun, 277, 36 N. Y. Supp. 734; People v. Medical Soc. of Erie Co., 24 Barb. 570; McNeil v. Association, 40 App. Div. 581, 58 N. Y. Supp. 119.

That there was a power reserved in the defendant's constitution and laws to amend the same must be conceded, and that the amendment in question was accomplished in due form and manner probably will not be questioned; so that we are brought at once to a consideration of one of the vital questions involved in this case, and that is, was the amendment of 1895 a reasonable one? Perhaps it would be a sufficient answer to this proposition to suggest that the question of reasonableness, like that of totality, was, in the circumstances of the case, one of fact; and assuming, as we are doubtless justified in doing, that as such it was passed upon by the trial court favorably to the plaintiff, the verdict of the jury might, for reasons already stated, be regarded as conclusive upon this court. But in this connection it seems again advisable to give expression to our views with some little amplification.

As we have already seen, the plaintiff entered into contractual relations with the defendant the moment he joined its order. This he was doubtless induced to do by the assurance given him that he would thereby and under certain specified conditions become entitled to the beneficial interests which were specifically set forth in the certificate

of membership, and in consideration of such assurance he obligated himself to make certain specified contributions to the beneficiary fund of the order. This condition of things continued for a period of more than eight years, during which period of time it was virtually conceded that the plaintiff fulfilled the obligations assumed by him in every particular. At about this time the defendant deemed it advisable to amend its laws in such manner as to change its contractual obligation to indemnify the plaintiff in the sum of $1,000 for an injury which should cause either permanent or total disability to one making total disability the sole condition upon which such sum should be paid, and also by making such sum payable in ten equal annual installments instead of at one time. This certainly was a most radical change, and one which, as has been said in a recent case, amounted to the "repudiation of a positive contract." Weiler v. Union, supra. If the plaintiff's right to the payment of the sum named at the time and upon the happening of the contingency mentioned in his contract was not one which was absolutely vested, it was certainly of that nature, and the defendant could not so change its obligation as to deprive the plaintiff of the interest upon the amount due him, or any portion thereof, for the period of ten years, or make the contingency upon which the payment of indemnity depended a very different and much less desirable one, without interfering with that right.

It is true that the plaintiff in accepting membership in the order voluntarily placed himself under the conditions and restrictions of its constitutions, including the right of amendment reserved therein; but in so doing it was his undoubted privilege to assume that any change which might thereafter be made in its organic law would not only be consistent with the object and purposes of the defendant's order, but also reasonable in its character. Suppose the effect of the amendment of 1895 had been to reduce the plaintiff's indemnity from $1,000, as specified in the contract, to $500, and had made the payment of this sum conditional upon the loss of both eyes, or both arms, or both legs, or had deferred payment until he reached the age of 80 years; could there be any question as to the unreasonableness of such a change? The effect of the amendment upon which the defendant rests its contention is different only in degree from what we have suggested by way of illustration; but it nevertheless involves the question of reasonableness, and that question as presented in this case was, as we have already intimated, one of fact.

Our attention has been directed to the case of Hutchinson v. Supreme Tent of Knights of Maccabees of the World, 68 Hun, 355, 22 N. Y. Supp. 801, in which it is claimed that the question we are now considering was decided adversely to the plaintiff; but the facts of that case were quite different from those of the case before us, as were also the terms of the contract entered into between the parties, and for these reasons we do not regard it as in conflict with the views to which we have given expression. But it is said that even if the terms and conditions of the contract had not been changed, but instead had remained as they were when the plaintiff received his certificate, he cannot recover, for the reason that, even if his injury was either total or permanent, it was not of such a character as to render him "unable

to direct or perform the kind of business or labor which he has always followed and by which alone he can thereafter earn a livelihood." The language here quoted is taken from that part of the defendant's laws which defines the disability which shall entitle a member to disability benefits, and its effect and meaning can best be ascertained by the application of certain familiar rules of construction.

It is to be noted at the outset that this language has been deliberately chosen and incorporated into its laws by the defendant, and for that reason alone it should not receive such a construction as will relieve the defendant from any liability whatever, as would be the case if we were to give to it the one contended for by the defendant; for it is somewhat difficult to conceive of a case where a party could be so severely injured as to be entirely disabled from directing the conduct of some kind of business. A brakeman on a railroad might lose both arms, and in consequence be unable to perform the kind of labor he had always followed; but he could doubtless direct some one else to do it if permitted by his employer, and he might possibly earn a living as a track walker, provided he could obtain such employment; but in these circumstances would it be seriously contended that if he were a member of the defendant corporation, under a certificate similar to the one we are required to construe, the language of its contract should be so construed as to relieve it from all liability?

Again, a farmer who has been so injured that he cannot hold a plow, or swing a scythe, or drive his horses, or milk his cows, might nevertheless hire some other person to perform these several duties, or he might direct how they should be performed, or he might leave his farm and find himself able to perform the duties of a flagman at a railroad crossing, and by so doing earn a livelihood, or at least sufficient to keep the wolf from the door; but would language which would admit of such a construction as is implied in this illustration be consistent with the purpose or intent of a benevolent, semicharitable, and fraternal organization? Manifestly not; and we think it would consequently be neither just nor reasonable to adopt such a construction in this particular instance.

Assuming, therefore, that the defendant really intended to confer upon its members the benefits which its endowment system purports to confer, we are of the opinion that it would be much more consistent with such intent to so construe its contract as to hold that the language above quoted means simply that if a party whose occupation is that of directing others in the performance of their duty is so injured that he can no longer follow that occupation, or if any member shall be so far disabled as to be unfitted for the performance of his ordinary occupation, or for following any other means of livelihood requiring substantially the same physical and mental ability as that in which he is usually engaged, he shall be deemed entitled to disability benefits. Such a construction would be just and reasonable, and it would not be unlike that given to similar language by the court of appeals in a recent case (Neill v. Order of United Friends, 149 N. Y. 430, 44 N. E. 145, 52 Am. St. Rep. 738); while the construction contended for by the defendant would, in our opinion, operate unjustly, and conflict with the present trend of authority (Spencer v. Grand Lodge, 22 Misc.

Rep. 147, 48 N. Y. Supp. 590, affirmed 53 App. Div. 627, 65 N. Y. Supp. 1146; Deuble v. Same, 66 App. Div. 323, 72 N. Y. Supp. 755; Langan v. American Legion of Honor [Sup.] 70 N. Y. Supp. 663). These views lead to the conclusion that the judgment and order appealed from should 'be affirmed.

Judgment and order affirmed, with costs. All concur.