DAVID MEDLINSKY, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, March 16, 1933.

*Max Rothenberg,* for the plaintiff.

*Tanner, Sillcocks & Friend* [*Dean Potter* of counsel], for the defendant.

LEWIS, DAVID C., J. The plaintiff was the proprietor of a small tailoring shop. It was a one-man establishment. He was boss and workman, tailor and presser. For years tailoring had been his one and only means of livelihood. Apparently he never knew or followed any other.

On the 15th day of February, 1920, the defendant sold him a $1,000 fifteen-year endowment life insurance policy. Attached to and forming part of the policy is a rider designated " Total and Permanent Disability Provision." This rider, among other terms, contains the following: " Doth hereby agree, that if while the above numbered policy is in full force and effect, and before default in the payment of any premium, the company receives due proof that the assured, as the result of injury or disease occurring and originating after the issuance of the policy, has become *totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit,* the Company will allow the following benefits   *   *   *:

" *Without prejudice to any other cause of disability,* the entire and irrevocable loss of sight of both eyes, or the severance of both hands above the wrist, or of both feet above the ankles or of one entire hand and one entire foot, will be considered as total and permanent disability within the meaning of this provision.

" Notwithstanding proof of disability may have been accepted by the company as satisfactory, the insured shall at any time,

but not oftener than once a year, on demand from the Company, furnish due proof of the continuance of such disability; and if the insured shall fail to furnish such proof, or if the insured is able to perform any work or engage in any business whatsoever for compensation or profit, no further premiums will be waived or allowed to accumulate as an indebtedness against the policy, nor will any further annuity payments be made." (Italics mine.)

On or about the 19th day of November, 1931, as a consequence of an accident, the plaintiff lost his right hand, the same being amputated above the wrist.

He claimed a permanent total disability. The defendant rejected his claim.

It cannot be disputed that his disability is permanent. The question remains, is it total, within the meaning of the policy.

Insurance is a business of ancient origin. The company sells its policies through solicitors, like merchants market their goods through salesmen. Because of the public nature of the business, the State regulates insurance companies. But this fact is not determinative of the question. We are to construe a contract; not a statute.

The proper interpretation of these provisions of the contract should reflect the common understanding of the parties. And their mutual agreement is to be found not exclusively in the etymological meaning of the words; nor solely in their legal significance; but in the evident sense in which the parties understood and employed them; provided such an interpretation does not violate the real and unequivocal meaning of the words.

To reach its conclusion, the law follows the route indicated by established principles of construction.

By holding to this main artery of legal thought and reason, we cannot go far astray of justice.

" Our guide is the reasonable expectation and purpose of the ordinary business man when mak'ng an ordinary business contract." (*Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81, 84.)

" The words should be given their ordinary, natural meaning, in view of the purpose of the contract, and to carry out its intent *as that intent would be gathered by an ordinary reader seeking to ascertain the meaning of the policy.*" (Italics mine.) (*Goldstein* v. *Standard Acc. Ins. Co.*, 204 App. Div. 452.)

" Where an insurance contract is so drawn as to be manifestly ambiguous, so that reasonable and intelligent men on reading it would honestly differ as to its meaning, the doubt should be resolved against the company, because it prepared and executed the agreement, and is responsible for the language used and the uncertainty

thereby created." (*Kratzenstein* v. *Western Assurance Co.*, 116 N. Y. 54, 59.)

" A construction which makes the contract fair and reasonable will be preferred to one which leads to harsh and unreasonable results. (*North Providence* v. *Ætna Indemnity Co.*, 90 Conn. 229; *Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 272; *Leschen & Sons Rope Co.* v. *Mayflower G. M. & R. Co.*, 173 Fed. 855.)" (*Aldrich* v. *N. Y. Life Ins. Co.*, 235 N. Y. 214, at p. 224.)

" If it is fairly susceptible of two interpretations, one of which being that contended for by the insured, it should be most strongly construed against the insurer   *   *   *.

" The court should construe the policy according to the intention appearing by the words." (*Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24, at p. 27.)

" If there be any doubt as to the meaning of its terms, the language should be given the meaning most favorable to the insured." (*Matter of Jaabeck* v. *Crane's Sons. Co.*, 238 N. Y. 314, at p. 322.) (See, also, *Hart* v. *Travellers Ins. Co.*, 261 N. Y. 563.)

The terms of this policy constitute the company's specific offer. It is a studied and prepared text.

The wording is the exclusive work of the company. The insured had no part in it. Therefore, whatever shortcomings may be found with the language is the sole fault of the company.

However, one must consider the rider in its entirety, not merely isolated phrases.

And so one reads the specific instances in which total disability shall be conclusively presumed, and learns that the so-called permanent and total disability may not continue a total disability during the entire life of the insured. For the policy provides that where a subsequent examination of the insured discloses his ability to engage in gainful work or profitable business, the disability will thereupon cease to be total.

" The policy defines certain losses of members which shall conclusively establish permanent total disability, but leaves it open to proof that total permanent disability exists due to other inflictions or afflictions   *   *   *.

" It must have been a matter of common understanding between the parties to such insurance policy that a condition which at the time appeared to cause total and permanent disability would often improve; and it is very natural to provide in the contract that if that which appeared to be a total permanent disability did improve, the benefits should not be realized. The provision that the benefits should be realized during the continuance of the total disability only does not indicate to me that the parties contemplated

that the word ' permanent ' was a synonym of ' temporary,' in the light of the, to me, significant fact that the benefits are to be realized *upon proof of total disability being furnished rather than upon actual total disability.* * * *

" There is a natural feeling that, after an insurance company has received its premium it ought not be allowed to avoid its responsibility and the just rule is that *policies should be construed strictly against the company which has drafted its provisions.* But to secure these benefits an additional premium of forty-four cents a year is paid. It certainly could not have been expected by the parties that the risk of liability under this clause was considerable; and, where the words used have a common and ordinary meaning, it seems to me the defendant is entitled to the benefit of that." (*Ginell* v. *Prudential Ins. Co.*, 205 App. Div. 494, 496.)

This same thought finds expression in an early case, where a solicitor sustained a sprained ankle, prohibiting him from going up or down stairs.

" Had I lost both legs, both arms, and both eyes, I might still be able to give instructions, or even, on an urgent occasion, give advice, seeing the head only is required, which would in one sense be following business; but I presume my being unable to walk downstairs will satisfy you." (*Hooper* v. *Acc. & Death Ins. Co.*, 2 Bigelow Life & Acc. Ins. 573.)

And so it was held the solicitor with a sprained ankle was totally disabled from doing his work.

One also infers from these specific cases of presumed permanent and total disability that the coverage is not to be confined to actual absolute and total incapacity to sustain an existence.

Even with the loss of a leg and an arm, the injury need not cause total incapacity. For notwithstanding such handicap a lawyer might still prepare his briefs; and a poet might still pen his verse.

Hence, these clauses suggest (if they do not invite) a practical construction, as contrasted with a strict technical or literal interpretation.

Counsel for the defendant refers to the fact that Paderewski became the Prime Minister of Poland, and hence submits that had he carried such insurance and had he sustained an injury to his little finger, it would not have spelled a total incapacity within the meaning of this policy.

Suffice it to say that this imaginary example proves nothing. The plaintiff is not a Paderewski.

One would hardly cite the miraculous accomplishments of the great Helen Keller to measure the capacity of this insured, or of

the ordinary average mortal. Nowadays the blind, the deaf, the dumb are enabled to serve in the work-a-day world. But that does not say that the normal man who loses one of the senses may not be totally disabled.

And where the insured has totally lost his ability to earn a livelihood in the only way he can; where he is totally unfit and unable to do the only work he knows, is he not totally disabled? — at least, until some new ability to earn his living is created.

One's ability to work is necessarily a practical problem rather than a legal question. Hence, in solving the problem, legal theory should yield to the practical facts. And if in fact a person is practically totally disabled, should he not in law be regarded as actually totally disabled.

For here it may be said that the facts speak louder than the words.

I do not conclude that because an old, experienced tailor, who has suffered the loss of his right hand, may labor on the stone pile, that fact is any proof that he is not totally permanently disabled within the purview of this policy. And I take it that the purview of the policy should control the view of the court.

Where, then, shall the line be drawn?

Time, necessity, opportunity and human instinct will invariably definitely decree, and then the court can determine accordingly. But until then, until science, individual determination, or nature, or all three, enable the insured to turn his hand to useful, profitable, self-sustaining labor, the insured is totally disabled.

Nor should the fact that the insured may be in receipt of profit accruing from the ownership of a business necessarily disturb our conclusions. The emoluments thus enjoyed may be no different than dividends from the ownership of stock. They are not the product of one's personal labors.

For the fact that a generous employer continues the wages of his disabled employee does not disprove his disability. ( *United States Casualty Co.* v. *Perryman*, 203 Ala. 212.)

Of course, if the insured should individually supervise, manage or actively personally participate in the conduct of his business, his claim to total disability might then end.

I appreciate that the policy does not purport to underwrite the employment of the insured or to protect him against any economic depression. It is not unemployment insurance.

The so-called total impairment of the individual is the sole risk covered by this policy.

But the essence of the matter is the ability or inability of *this insured* to earn a substantial living.

The enjoyment of the protection of the policy is not contingent upon the loss of all physical or mental incapacity but upon the loss of the ability of the insured to earn a substantial livelihood, and this depends as much on the individual as on the injury.

So we find it held that the rights of an insured depend upon his own disability and impairment, not upon whether it be more or less than the average man.   (*Wills* v. *United States*, 7 F. [2d] 137.)

I am unwilling to believe that when the insured took this policy he contemplated or understood that he would have to be rendered physically and mentally incapable of any manual labor or mental effort, before he could claim its protection.  I reckon that he gathered from its terms that if he was rendered unable to personally pursue any *substantially* gainful occupation or hiring, or, as the policy puts it, " perform any work or engage in any business for compensation or profit," he would be entitled to its protection.

Such a conclusion appears to me in step with the decisions of our court and not in conflict with the terms of the policy.

" Total disability must, from the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which the party insured is engaged."   (*Wolcott* v. *United L. & A. Ins. Assn.*, 55 Hun, 98, 100.)

" * * * for it is somewhat difficult to conceive of a case where a party could be so severely injured as to be entirely disabled from *directing* the conduct of some kind of business."   (*Beach* v. *Supreme Tent of Knights of Maccabees of the World*, 74 App. Div. 534 [4th Dept.], opinion of ADAMS, P. J.)

" He might be deprived of both feet and both hands and still be able to sit and watch a milk car, and thus engage in *some other occupation*.  Such a construction would practically relieve the defendant from all liability, for total disability from accident seldom occurs."   (*Neill* v. *Order of United Friends*, 149 N. Y. 430, opinion of HAIGHT, J.)   (See, also, *Davis* v. *Equitable Life Assur. Soc.*, 261 N. Y. 565.)

It has been repeatedly stated that a policy should be construed to give the insured the indemnity supposedly contracted for, to the exclusion of any narrow or technical interpretation which would defeat the intent of the parties.   (See, also, 7 Couch Ins. 5767.)

In those instances where the total disability clause expressly designates the particular occupation of the insured, the law has not exacted an incapacity to perform any of the functions of his calling, to constitute a total disability; it has accepted a disability to substantially carry on the designated occupation.  By analogy, where the policy does not designate an occupation, the ability of

the insured to do substantial work — not any work — should be the test.

In the composition of this policy the defendant should have known: " ' Insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men of average intelligence who invest in these contracts may know and understand their meaning and import.' " (*Paskusz* v. *Philadelphia Casualty Co.*, 213 N. Y. 22, at p. 26, CARDOZO, J., quoting from *Janneck* v. *Met. L. Ins. Co.*, 162 id. 574, 577.)

Man knows he is never immune from mishap.

This uncertainty is the basis of accident insurance. No concealment, deception or misrepresentation can be laid at the door of the insured. The hazard was plain; and the policy cannot be separated from the risk. The contingency occurred. Accident befell the insured.

The decree of the court — unlike the arbitrary decree of fate — is controlled by reason and equity.

Judgment for the plaintiff. Ten days' stay.