SAMUEL SHABOTZKY, Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, June 16, 1939.

*James D. Ewing* of counsel [*Alexander & Green*, attorneys], for the appellant.

*Sidney J. Loeb* of counsel [*Prince & Loeb*, attorneys], for the respondent.

DORE, J. Under four policies of insurance issued by defendant, plaintiff sued to recover disability benefits claimed to have become due from October 30, 1936, to and including January 30, 1937, and refund of premiums paid on the ground that plaintiff was totally and permanently disabled within the meaning of the policies during the period in question. Defendant counterclaimed for

disability installments totaling $462.20 paid to plaintiff for a preceding period, May to September, 1936, throughout which period defendant contended that plaintiff had not been disabled under the terms of the policy but had obtained the prior payments through misrepresentation.

On plaintiff's case the jury in the Municipal Court, Bronx, Second District, returned a verdict for defendant and on defendant's counterclaim a verdict in defendant's favor for $462.20, and the trial court denied the motion to set aside the verdicts and for a new trial. The Appellate Term, however, reversed the judgment in defendant's favor and ordered a new trial. This appeal is pursuant to leave granted defendant by the Appellate Term on a stipulation for judgment absolute.

The disability provisions of three of the policies are identical in form, and while the provisions of the fourth are slightly different, they may be regarded for the purpose of this appeal as substantially the same. The policies define disability to be total when the insured is prevented thereby " from engaging in any occupation or performing any work for compensation of financial value," and the disability is presumed to be permanent when it has existed continuously for three months. The policies also provide that if it appears that the insured has recovered from disability and has become able to engage in any remunerative occupation or work the disability payments cease.

Plaintiff's testimony was that he became ill in 1935, that he had been a manufacturer of ladies' coats but gave up his business and dissolved his firm in that year and has done no work since, and that he was paid disability benefits by the defendant from May, 1935, to and including September, 1936. Plaintiff called four doctors, including his family physician, who testified substantially that plaintiff had an old coronary thrombosis, was suffering from coronary sclerosis and myocardial damage and enlargement of the heart; that the condition was permanent and he was not able to enter into any occupation or perform any work; that doing so would be very detrimental to his health, and he must lead a completely sedentary life.

Plaintiff's medical testimony was uncontradicted by testimony of experts, defendant presenting no medical testimony whatever in its own behalf. Defendant, however, called ten witnesses who testified to plaintiff's activities to the effect that plaintiff was present during the summer of 1936 at a camp near Monticello, N. Y., actively engaged in the duties of a camp director; that he took part in conferences for the purchase of the camp, employed the counselors, superintended the grounds, appeared at meal times in the

mess hall floor, entered the kitchen and helped at times to " dish out " food, saw prospective customers for the camp and showed them the camp, took care of guests and business dealings with them, signed receipts for deliveries, and generally performed the duties of camp director. In rebuttal plaintiff and his witnesses denied that he was the camp director, that he transacted any business or did any work about the camp, though plaintiff admitted signing numerous receipts in evidence for merchandise delivered to the camp, and that he was at the camp on week-ends but not on business or engaged in work.

The court charged the jury that the evidence presented an issue of fact as to whether plaintiff was gainfully occupied as the owner and director of the camp, that the opinion of the doctors who told of plaintiff's condition should be considered by the jury in deciding that issue, but was not conclusive; that the test was whether plaintiff was so disabled as to be prevented " from following any substantial, gainful occupation; " that if the jury found he could work and be paid for his services, he was not permanently and totally disabled; that there would not be total disability if there was work within the plaintiff's capacity " which, without injury to his health, he could perform for a compensation and profit." The court also charged: " Now, the question for you to ask yourself is this: Was this plaintiff able mentally or physically to hold a job and thereby to earn a substantial wage, and profit by that wage? If he were, he was not totally disabled within the meaning of this policy." The court also charged that in the plaintiff's case the burden was on the plaintiff to prove that he was not employed at the camp or any other place during the period for which he claims he was disabled.

In its reversal of the judgment in defendant's favor the Appellate Term held that it was error to charge " that the criterion of disability under the provisions of the policies was mental or physical disability " and that plaintiff's evidence indicated " that he could not engage in physical work without injury to his health even though such work was not entirely impossible on his part, and that he was permanently disabled under the provisions of the policies." We think the reversal was error and that the judgment entered on the jury's verdict should be reinstated.

Plaintiff's contention on this record must be that if from what he calls the medical viewpoint, that is, the opinion of medical experts uncontradicted by any medical testimony adduced by defendant, he was unable to engage in any occupation, he must be regarded as totally disabled irrespective of remunerative occupational activities in which he may have engaged against his physician's

advice throughout the period in dispute. This view was apparently adopted by the Appellate Term. But the issue for the jury was whether plaintiff was disabled within the meaning of the policies, and that issue was to be decided not merely in the light of the opinions of plaintiff's medical experts but in the light of all the evidence, including plaintiff's activities, established to the jury's satisfaction, and we think by the weight of the evidence on the whole case. These activities were not trivial or sporadic, but substantial. In this jurisdiction we find no case and none is called to our attention which supports what must in the final analysis be plaintiff's claim that the testimony of medical experts that an insured is totally disabled, if uncontradicted by other medical testimony, entitles him to judgment for disability benefits regardless of proof concerning his actual and substantial activities engaged in for compensation or profit while he was in his doctor's opinion totally and permanently disabled. Opinion testimony, even if uncontradicted, is subject to the exercise by the triers of the fact of their independent judgment. (*People ex rel. Third Ave. R. R. Co.* v. *Tax Commissioners*, 212 N. Y. 472, 485.) There the court said: " While it is, speaking generally, true that a jury has not the right, arbitrarily, to ignore or discredit the testimony of unimpeached disinterested witnesses, so far as they testify to facts, and that willful disregard of such testimony will be ground for a new trial, no such obligation attaches to witnesses who testify merely to their opinion; and the jury may deal with it as they please, giving it credence or not as their experience or general knowledge of the subject may dictate. (*The Conqueror*, 166 U. S. 110.) " In the case at bar the opinion evidence, while not contradicted by contrary medical opinion, was seriously controverted by evidence showing plaintiff actually and substantially engaged in an occupation for profit.

It has been repeatedly held in this jurisdiction that to recover under policies such as those before the court plaintiff must show his disability was such as to prevent him from engaging in any occupation or performing work for compensation of financial value. (*Finkelstein* v. *John Hancock Mut. Life Ins. Co.*, 247 App. Div. 74; *Steingart* v. *Metropolitan Life Ins. Co.*, 249 id. 114; affd., 276 N. Y. 674; *Fuchs* v. *Metropolitan Life Ins. Co.*, 253 App. Div. 665.) This does not mean an insured must be utterly helpless; the phrase is not absolute, but relative. At least it means the insured is unable to engage in a remunerative occupation as that phrase is ordinarily understood, or to do work in some profitable employment or enterprise. While the evidence in this case disclosed that plaintiff was suffering from a disease of the heart, it

failed to establish that such disease totally disabled him within the definitions contained in the policies. (*Elenberg* v. *Metropolitan Life Ins. Co.*, 251 App. Div. 443 [1st Dept. June, 1937].)

The testimony adduced in the whole case presented a question of fact as to whether plaintiff was totally disabled within the meaning of the policies throughout the periods involved. In this record and in the charge of the court considered as a whole we find no prejudicial reversible error. The jury's verdict in defendant's favor is clearly supported by the weight of the evidence and should not have been disturbed.

The determination of the Appellate Term should be reversed, with costs and disbursements to the defendant in this court and in the Appellate Term, and the judgment of the Municipal Court in defendant's favor affirmed.

MARTIN, P. J., O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Determination unanimously reversed, with costs and disbursements to the defendant in this court and in the Appellate Term, and the judgment of the Municipal Court affirmed.