MAYER STARR, Respondent, *v.* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

First Department, June 16, 1939.

*James D. Ewing* of counsel [*Samuel M. Lane* with him on the brief; *Alexander & Green,* attorneys], for the appellant.

*Bernard Gordon* of counsel [*William B. Sandler,* attorney], for the respondent.

DORE, J.   Under the terms of an insurance policy which defendant had issued to plaintiff, this action was brought to recover disability benefits of twenty-seven dollars and eighty-six cents a month for the period from March 5, 1936, to November 5, 1936, and the refund of premiums paid during that period.   Plaintiff's policy provides for disability benefits effective on due proof that the insured " became totally and permanently disabled by bodily injury or disease," in which event the insurer agrees to waive payment of all premiums during the continuance of such disability and to pay insured agreed monthly disability payments.   The policy defines total and permanent disability as follows: " Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such Total Disability shall be presumed to be Permanent when it is present and has existed continuously for not less than three months."

Prior to the period involved in this action defendant had paid to plaintiff disability benefits under the policy from April, 1933, to July, 1935.   When defendant discontinued such payments plaintiff brought a prior action to recover for the period from July, 1935, to March, 1936.   After a trial before the court and a jury plaintiff recovered judgment; defendant served but later withdrew a notice of appeal and paid the judgment in full on November 24, 1936.

Plaintiff then brought this action for the immediately subsequent period from March, 1936, to November, 1936.   On this trial plaintiff offered in evidence the judgment roll of the former action and called as the only witness in plaintiff's case Dr. George Flamm

who had furnished the sole medical testimony in the prior trial. Dr. Flamm testified that he had examined plaintiff during the noon recess of the trial and found him suffering from sclerotic vessels and lenses beginning to show a cataract formation of the eyes; dilation of the aorta, enlargement of left ventricle and murmur of the heart, emphysema of the lungs, sclerotic or pipe stem radial artery, tenderness over the epigastrium resulting from ulcers, and double inguinal hernia; that plaintiff was unable by reason of his condition to engage in or perform any work for compensation, and that his condition was permanent. On cross-examination Dr. Flamm testified that to diagnose a heart condition an electro-cardiagraph is always taken in the best hospitals and an X-ray or an orthodiagram and an exercise tolerance test; that he knew these things but did not take any X-ray, electro-cardiagraph, ortho-diagram, or give any tolerance test; that plaintiff is not his patient, that he never prescribed for him and examined him only twice: during the first trial at the courthouse; at his office on the day of the trial of this action; and had never seen plaintiff during the interval.   Without further proof plaintiff rested.

Defendant called six witnesses who testified in effect that during the period in question plaintiff had been actively engaged in carrying on a poultry business in the Bronx.   Thus the witness Green testified that he saw plaintiff in September, 1936, at a meat and poultry store scrubbing the counter, that when plaintiff finished cleaning the counter he took a broom and started to clean the store, plucked a chicken and cleaned it, placed it in a bag and sold it to Green.   The witness Regan testified that in April, 1936, she went to the poultry market where she found plaintiff and his wife plucking chickens and waiting on four or five customers; that after she ordered a chicken from the plaintiff's wife, plaintiff weighed it and marked the price on a paper bag which was received in evidence; that an unidentified man then ran up to plaintiff, who immediately retired, took off his working clothes and went to stand behind another counter until the witness left the market. The witness McCarthy, defendant's investigator in charge of this claim, testified that he had observed plaintiff at work in the poultry market on numerous occasions between March and September, 1936, that on one occasion plaintiff admitted he had been in business in one particular market for two years at the same store; that on another occasion plaintiff was working in a store about six A. M. in connection with a " Grand Opening " of a new poultry market and waited on sixty customers between six A. M. and ten A. M.

In addition moving pictures taken at various times were exhibited by defendant showing plaintiff walking in and out of a store

decorated with signs indicating a " Grand Opening," sweeping the sidewalk, washing the inside of store window, carrying a large bag into the store on his back and carrying other things.

Called for the first time in rebuttal, plaintiff testified in his own behalf that for the past five years he did nothing because he " couldn't do anything and couldn't walk." He was then questioned as to his physical condition and gave testimony which in part at least was not proper rebuttal. Plaintiff denied owning the markets, stated that his wife had a poultry concession, that he had nothing to do with the ownership, that he sometimes went there to pass the time but did no work for five years. On cross-examination, however, plaintiff showed himself entirely familiar with the operation of the store, the volume of trade, etc., testified that his wife could not read or write and that he paid the rent for the former concession by checks drawn on his bank account.

Defendant adduced no medical testimony whatever although plaintiff testified that since the beginning of his disability he had had six or seven examinations but had not been examined by defendant subsequent to the prior trial.

In the course of the charge the court, after properly charging that plaintiff must prove " total disability to such an extent that he is prevented from engaging in any occupation or performing any work for compensation of financial value," also charged the jury as follows:

" Disability here, to substantially performing the duties of an occupation, or an illness which in the exercise of common care and prudence would require the insured to desist from that business or occupation in order to effect a cure, would be deemed to be total disability under the terms of a policy of this type. * * *

" Some work could be anticipated. Some leeway may be allowed for some work. * * * If that some work done by him even reacts to the detriment of his health and against the wishes of his physician, that some work is not banned by this policy because after all if he is foolish enough to risk his life and sudden despatch from this earthly existence by doing what is against all common sense and medical advice, that some work should not defeat his recovery as such. It is only when you find the man is in such a state of health that there is no further impairment to be anticipated by doing some work or slight work, that that some work or slight work is beneficial and gainful to him and is not going to hamper and set him further back or make his disease progress; that is the some work; that is banned. * * * If you find that he did work but it was not such as to have been gainful employment, if you find it was of necessity or if it further impaired his health, that some

work should be excusable and should not be considered entirely as a gainful occupation that he was able to resume."

In contrast, and in partial contradiction to the above, the court also charged: " So that the test is has he performed any work? Has he performed work of a substantial nature and for gain and compensation? If he has, it does not make any difference what the doctor tells you. If he has indicated by his very own conduct, that he is not permanently and totally disabled by his own conduct, you should judge him by his own conduct rather than that of experts who are giving you an opinion."

When defendant's counsel excepted to a part of the charge referring to ambiguity in the contract and asked the court to charge that the policy paid benefits only in the event that the insured is unable to engage in any occupation, the court declined so to charge, but charged that if there was any ambiguity as to what the word " any " means it should be resolved in favor of the insured, and then repeated his prior charge that the insured by the contract was not prevented " from doing some work which may be work of necessity, which impairs his health and which is against his own doctor's orders, providing that some work is not of financial gain and is not substantially the work that he did perform before his disability." Defendant excepted.

We think the charge was erroneous and inconsistent and could not have formed a proper guidance to the jury on the issues involved. The terms of insurance policies similar to the one before the court have frequently been construed by our courts to mean that the insurer is obligated to pay only in the event that the insured is prevented by reason of the disability from engaging in any occupation and performing any work for compensation or profit. (*Fuchs* v. *Metropolitan Life Ins. Co.,* 253 App. Div. 665; *Finkelstein* v. *John Hancock Mut. Life Ins. Co.,* 247 id. 74; *Steingart* v. *Metropolitan Life Ins. Co.,* 249 id. 114; affd., 276 N. Y. 674.)

By the charge last referred to, the jury was instructed that the test for total disability was whether plaintiff could substantially do the work that he did prior to the commencement of his disability as though the policy was one of vocational insurance. The jury was also instructed by other quoted portions of the charge and also portions unquoted that work engaged in against the doctor's wishes or that reacts to the detriment of plaintiff's health was not such as to prevent a recovery. The contract is that the insured shall be " prevented " by his disability from engaging in any remunerative occupation and the payments were indemnity for such total disability. Many persons engage in work against the wishes of their physicians. Many others continue to work for years in remunera-

tive occupations that are in some degree detrimental to their health. The charge as made was erroneous and plainly inconsistent with the other portion of the charge in which the jury was correctly instructed that if plaintiff by his conduct indicated he was not totally and permanently disabled he should be judged by his own conduct rather than the testimony of an expert who was giving an opinion.

To constitute total disability it is true an insured need not be absolutely helpless or bedridden, but it is unnecessary to attempt to define academically the practical and reasonable limits of the rule now thoroughly settled in this jurisdiction. Sufficient for the present case to say that the nature and extent of the occupation and remunerative work performed by this plaintiff during the period involved conclusively show despite his expert's opinion that plaintiff did not come within the rule laid down by repeated decisions of this court. In *Fuchs* v. *Metropolitan Life Ins. Co.* (*supra*) this court by Presiding Justice MARTIN said with respect to a contract such as this: " The contract here does not insure against occupational disability. The defendant is obligated to pay only in the event that the insured is prevented, because of the claimed disability, from engaging in any occupation and performing any work for compensation and profit."

During the course of defendant's opening, plaintiff's counsel requested the court to direct the stenographer to take down the opening and this was done, but a similar request made by defendant's counsel with regard to plaintiff's summation was denied on six separate occasions. Under the circumstances disclosed we consider the discrimination was error.

We entirely agree with the view of the learned justice of the Appellate Term who dissented from the affirmance, that total and permanent disability was not established by a fair preponderance of the evidence. We think the evidence showing that plaintiff was actually working in a gainful occupation during the period in question disproved the medical testimony that he was totally disabled and unable to work. Plaintiff's testimony that he had not worked for five years and could not walk was destroyed by the moving pictures introduced in evidence and the testimony of numerous witnesses showing his active employment in the poultry market as well as by his own testimony on cross-examination showing complete familiarity with the business which his wife was obviously unable to run without his active and steady assistance. The testimony of plaintiff's doctor who had never treated plaintiff but was procured for the purpose of testifying at the trials was conclusively disproved by the proof that plaintiff actually did

work over a long period of time.   All of this evidence also rebutted the presumption arising from the fact that plaintiff had been previously admitted to have been totally disabled for over three months.

On this record we consider it established that plaintiff was during the period in question not prevented from engaging in any occupation or performing any work for compensation or profit.   The jury's verdict is against the weight of the evidence and undoubtedly was influenced by the errors in the court's charge.

For the reasons stated, the determination of the Appellate Term and the judgment of the Municipal Court should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Determination of the Appellate Term and the judgment of the Municipal Court unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.