## BOYARSKY v. TRAVELERS INS. CO.

United States District Court
S. D. New York.

April 12, 1948.

Aarons & Salonger, New York City (Matthew L. Salonger, New York City, of counsel), for plaintiff.

Galli & Locker, New York City (John G. Donovan, New York City, of counsel), for defendant.

HULBERT, District Judge.

This is an action at law, tried to the court, a jury having been waived.

The plaintiff seeks damages for breach of a contract of indemnity issued by the defendant dated June 8, 1931, whereby the defendant, in consideration of the payment of a premium of $233.80 annually, agreed to pay to Tillie Boyarsky, wife of the insured, immediately upon receipt of due proof of his death, the sum of $10,000, and by a "rider" and the payment of an additional annual premium of $43.40, the defendant "upon due proof, following notice of claim submitted during the lifetime of the Insured, that since the payment of the initial premium upon the contract and upon this provision, before a default in payment of any subsequent premium, before the Maturity Date, if any, so designated on the first page of the contract and before the anniversary of the contract nearest the sixtieth anniversary of date of birth, the Insured has, during the continuance of the contract, become and at the time of giving such notice is wholly disabled by bodily injuries or disease and thereby prevented from engaging in any occupation or employment for remuneration or profit and has been so prevented for a period of not less than four consecutive months, the following benefits will be granted:

"1. The Company will waive the payment of any premium which may fall due on the contract during such disability and will refund any premium previously paid during such disability. The privileges and values of the contract shall be the same as if such premium payments were made by the Insured.

"2. The Company will pay to the insured for each completed month of such disability subsequent to the end of the third month the monthly income hereinabove stated, but in no case will the monthly income be paid for a period of more than one year prior to the receipt of notice of claim. If such disability is due to or is accompanied by mental incapacity this income may at the election of the Company be paid to the Beneficiary under the contract for the benefit of the Insured.

"3. Any premium waived and any disability income paid under this provision

will not be deducted in any settlement under the contract.

"4. Independently of all other causes the Company will consider as total disability the entire and irrecoverable loss of the sight of both eyes or of the use of both hands, or of both feet, or of one hand and one foot."

Defendant admits the receipt of a proof of claim from the plaintiff on December 21, 1942, but contends that plaintiff was not then, nor at any time prior thereto, "wholly disabled by bodily injuries or disease and thereby prevented from engaging in any occupation or employment for remuneration or profit."

The defendant pled a counter claim for the reformation of the agreement to state the true date of plaintiff's birth. This latter issue will be disposed of first.

In his application for the policy, plaintiff stated that he was born in Poland on May 15, 1891. He claims to have migrated to the United States about 1907.

The defendant pleads in its answer that plaintiff was born May 28, 1889, but amended the answer on the trial to fix the date as May 23, 1888. When it undertook to offer proof in support thereof, the plaintiff conceded the date of birth to be May 28, 1889, as originally alleged in the answer, and the defendant accepted that concession, in consequence of which the amount of the policy should be reduced to the sum of $9,300.52 and the amount of monthly disability income so purchased would be reduced to $93.01. Upon that issue defendant will have judgment accordingly.

In his native Russia (Poland) at the age of 11, plaintiff began to operate a machine for stitching the upper parts of shoes and continued that occupation after his arrival in the United States. Some 10 years later he formed a partnership with another person and engaged in the manufacture of shoes under the name of New Idea Company; he continued to cut and stitch uppers, working from 7 A.M. often until 10 or 11 P.M. A short time later, two additional partners were taken into the business which was then incorporated as Colonial Shoe Company. Plaintiff became its President but continued to do substantially the same kind of work for some time thereafter. The business grew until ultimately it had 120 employees and grossed approximately $500,000 worth of business per annum. Until 1929 it operated at a profit, from which the plaintiff withdrew approximately $10,000 per annum.

In 1934 plaintiff complained of an illness; he consulted Dr. Rubenstein and Dr. Zarch, who appear to have treated him for lung trouble.

In 1936 the Colonial Shoe Company made an assignment for the benefit of creditors. Plaintiff then undertook individually to purchase and sell "findings" to shoemakers; he operated alone, calling upon the trade with the use of an automobile, which he later exchanged for a small truck.

In 1937 he took in one Weissberg as a partner. During that year, he consulted Dr. Zarch, who referred him to Dr. Joachim (since deceased), and then he consulted Dr. Boaz, a heart specialist, and upon his advice plaintiff took a rest for seven weeks. It was then that he joined up with Weissberg, but this only lasted a few months. Plaintiff peddled a line of findings until 1940. One morning he called on a customer who asked for a certain type of soles which were tied up in bundles of 12; he tried to reach for them on an upper shelf of his truck and felt a pain in his left arm extending to his heart; he became dizzy; he revived, went home and laid down. Dr. Gershwin was called in, examined plaintiff and prescribed bed rest. It was then that plaintiff gave up his business, sold the truck and claims to have done no work since.

He also consulted Dr. Rubenstein and Dr. Zarch after the attack in 1940; saw Dr. Singer in 1941 and a Dr. Seigler in 1942, as well as Dr. Gershwin.

Since 1942 plaintiff and his wife have been spending the winter months in Miami, Florida, and while sojourning there he has consulted Dr. Balobsky, Dr. Kleinman, Dr. Roche and Dr. Libov. Only Gershwin and Seigler were witnesses at the trial.

Plaintiff was also examined in Miami, Florida, at the instance of the defendant

by Dr. Flipse on February 9, 1943; by Dr. Kugel (since deceased) on March 3, 1944, and by Dr. Nicol, July 18, 1944. He was also examined by Drs. Lohman and Jacobson representing another Insurance Company, and by Dr. Eggelson in New York in April, 1947.

The report of Dr. Flipse recommends that some consideration be given to plaintiff's claim, and Dr. Eggelson testified he reported to the defendant that plaintiff should have the benefit of the doubt.

Of course those statements are nothing more than an opinion of a Medical Examiner who undertook to make a difficult finding of fact as well as express a medical opinion.

The question presented to the court is, at least, as difficult a question of law, namely,—has the plaintiff discharged his duty as a party litigant when he introduced in evidence the claim filed with the insurer, and then testified that, upon medical advice he has done no work since the alleged date of the onset of his disease? The defendant attempted to establish that the plaintiff has on many occasions, fished off the causeway at Miami, and on a number of other occasions that he had been out at night visiting friends and sometimes returned at early hours in the morning. But, such evidence does not establish his ability to seek gainful employment.

Careful consideration of all the proof adduced at the trial satisfies the Court that the plaintiff was disabled during the period for which he now seeks recovery. The issue thus presented is whether plaintiff has established that his disability was of the character contemplated by the contract of insurance upon which this action is predicated.

■ Reading the provisions of the policy the Court's interpretation thereof is that the parties did not intend that the disability of the plaintiff to enable him to recover, must be permanent. The policy provides "if and when the Insured shall cease to be totally disabled, all benefits hereunder shall cease and premiums falling due thereafter shall be payable to the Insured." Hence the Insured is entitled to recover if he was wholly disabled "for a period of not less than four consecutive months."

A review of the cases cited by counsel for the respective parties has been helpful but they are not directly in point. Each rests mainly on its own facts.

Special reliance is placed by defendant on Starr v. Equitable Life Assurance Society, 257 App.Div. 261, 12 N.Y.S.2d 953, but in that case the evidence showed that the plaintiff therein was engaged in an occupation during the period he sought payment from the insurance company, which fact is absent here.

■ The disposition of this case must rest upon the interpretation and application of the law to the facts established at the trial. The terms of the policy are not viewed by the Court to be of doubtful meaning, and ambiguity cannot be attributed to the words used if in fact no such ambiguity exists. Cf. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S. Ct. 230, 76 L.Ed. 416.

The situation here presented is that the plaintiff is not "utterly helpless." Shabotzky v. Equitable Life Assurance Society of the United States, 257 App.Div. 257, 12 N.Y.S.2d 848. It is possible to conceive of some occupation which could be filled by a man with heart disease without proving fatal. On the other hand, it can also be reasoned that for plaintiff to engage in any occupation would create a risk, due to his condition. Human experience shows that persons with heart disease often live long lives and engage in some gainful occupation. Others with heart disease, who do so, often meet with early death brought on by the activity.

The medical evidence in the case at bar is very conflicting.

"One's ability to work is necessarily a practical problem rather than a legal question." Medlinsky v. Metropolitan Life Ins. Co., 146 Misc. 855, 263 N.Y.S. 179, 184.

■ Upon all the proof in this case the Court is satisfied that the plaintiff has, by a fair preponderance of the evidence, established that he was wholly disabled with-

in the terms of the policy and accordingly, is entitled to judgment.

The attorneys for the plaintiff are requested to submit suggested findings of fact and conclusions of law and to serve a copy thereof upon the attorneys for the defendant who will, within ten days thereafter, submit their suggestions and criticisms, and the Court will then make up its own findings of fact and conclusions of law.