Charles G. Tierney, J.
Plaintiff sues to recover claimed indemnity benefits under a group policy of accident insurance issued by defendant to the producer of a road version of “ My Fair Lady ’ ’. The policy provided for the payment of a specified weekly indemnity to certain performers in the show, of which plaintiff was one, who,-by reason of bodily injury, are disabled and prevented from performing at their respective occupations. To be compensable the disability must arise out of an accident occurring during a performance or rehearsal for which benefits are payable under Workmen’s Compensation Law. The weekly indemnity provided under the policy was to be an amount which when added to the weekly workmen’s compensation award would restore the performer to his full weekly salary, at least for the duration of the show.
This action ivas tried before the court without a jury, and at the close of all the evidence, decision was reserved. Findings of fact and conclusions of law were waived.
The controversy herein arises out of the interpretation to be given to certain provisions of the policy which, insofar as is relevant, state as follows: “When * * * the insured employee is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation and is under the regular care and attendance of a legally qualified physician or surgeon * * * the company will pay the applicable weekly accident indemnity stated herein, not to exceed fifty-two consecutive weeks. After the payment of the applicable weekly accident indemnity for fifty-two weeks * * * the company will continue to pay such weekly accident indemnity for the period the insured employee is wholly and continuously disabled and is under the regular care and attend *63 anee of a legally qualified physician or surgeon s * * and prevented by reason of said injury from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by training, education or experience for a period not to exceed two hundred and eight weeks
There is no issue as to the indemnity due under the first-quoted provision, defendant conceding its liability thereunder in the principal sum of $2,074.64.
Plaintiff contends that she is entitled to full indemnification to date under the second-quoted provision because, by reason of her injury, she is prevented from engaging in the only occupation or employment for which she is reasonably qualified by training, education, or experience, i.e., dancing.
Defendant contends that at the termination of the 52-week period for which it concedes liability, plaintiff was reasonably qualified for employment other than dancing, from which she was not prevented by virtue of her injury.
The following facts are not in dispute. Plaintiff was born on October 23, 1942. She was trained in the dance from age four, with emphasis on ballet and acrobatics. She attended educational schools and acquired a high-school diploma in 1958 at the age of 16% years.
Plaintiff began her professional career at the age of 15%, appearing in a variety of musical comedies in Summer and Winter stock. From November, 1958 until May 2,1961, the date of her unfortunate accident, plaintiff was engaged as a dancer with a road show of ‘ ‘ My Fair Lady ” at a weekly salary of $160. On the latter date, plaintiff then 18 years of age, fell during the performance of a dance scene and injured her left knee. She was immediately taken to a hospital. There the injured leg was placed in a cast. Plaintiff was confined to the hospital for 10 days. The cast remained on her leg for 1 month.
In October, 1961, plaintiff returned to dancing school, but was forced to discontinue when her injured leg collapsed. At that time it appeared that the condition of her knee was worsening. Thereafter, in February, 1962, plaintiff underwent exploratory surgery on her knee.
Since February, 1963, plaintiff has been almost steadily employed, either on a full or part-time basis. Her first position, as a model and later as a receptionist, lasted three or four months; her second position, as a saleslady, lasted almost a year. She was then employed for approximately a year and one half until August of this year on a part-time basis, as a teacher in a school for modeling and charm,
*64 According to medical expertise, it is doubtful, perhaps improbable, that plaintiff will ever dance again; however, the condition of her left knee now and at the termination of the 52-week period for which liability is conceded permits plaintiff to perform work not requiring excess standing, walking, climbing or running.
Insofar as this court can determine, the interpretation of the particular language employed by defendant to delineate the type of disability which is indemnified after the lapse of one year presents a case of first impression. None of the precedents consider a disability which prevents an assured from “ each and every occupation or employment * * * for which he is reasonably qualified by training, education or experience.”
But whatever the language used, the result in interpretation seems to be the same so long as the disability clause expresses the requirement that the disability to be compensable be total and prevent the assured from engaging in any occupation whatsoever for economic gain.
In Williams v. John Hancock Mut. Life Ins. Co. (245 App. Div. 585 [4th Dept. 1935], rehearing den. 246 App. Div. 891 [1936]), the court in discussing the disability clause of a life insurance policy providing for benefits in the event the assured is prevented from engaging in any occupation for wage or profit, stated as follows at pages 586-587: “We cannot by our construction of that contract increase the risk assumed, and thus extend the resulting liability. ‘ We are not at liberty to revise, while professing to construe ’ [Case cited]. On the other hand, the contract should not be given such a strict and literal construction as to deny its benefits to an assured whose disability may have reduced his capacity for work to a type of possible employment far below, and entirely out of line with, the usual forms of gainful occupations. We propose to construe the contract reasonably and to give it practical application. Accordingly we rule that the total disability contemplated by the particular group policy of insurance before us which would justify recovery thereunder is such an infirmity from bodily injuries or disease as will continuously prevent the assured * * * from engaging in any of the common forms of employment for wage or profit for which he is reasonably qualified.”
This rule was followed in Weisser v. Travelers Ins. Co. (258 App. Div. 755 [2d Dept. 1939]). There the clause “ total disability to engage in any occupation or employment for wage or profit ’ ’ was held to mean an inability of such an extent that the assured is “unable to perform services of the type required in commonly accepted occupations or forms of employ *65 ment.” (See, also, Waldman v. Mutual Life Ins. Co. of N. Y., 252 App. Div. 448 [2d Dept. 1937]; Shabotzky v. Equitable Life Assur. Soc.; 257 App. Div. 257 [1st Dept. 1939].)
Applying those principles to the case at bar, it would be, in the opinion of the court, a distortion of the disability clause to hold that plaintiff, on the first anniversary of her accident, was disabled from other occupations or employment for which she was reasonably qualified. Of course, insofar as the court can determine, plaintiff does not contend that she is disabled physically from other forms of employment. Bather, plaintiff contends that, because of a unique childhood, she was qualified on the first anniversary of her accident for only one occupation, i.e., professional dancing1, from which, concededly, she is and has been disabled.
The court concludes that plaintiff, as the recipient of a high-school education, was on the first anniversary of her accident at least qualified to engage in any of the common forms of employment available to girls of a similar age and background. Furthermore, her injury was not of a type which would, because of undue strain, disable her from such employment.
The court is not unmindful that such employment opportunities are not as rewarding financially as professional dancing, a career for which plaintiff was specially trained from early childhood. Unfortunately, the clause under consideration was not intended to indemnify such a contingency. It is sufficient to bar a recovery thereunder that the assured can qualify for other employment which, in a fair sense, is remunerative (Waldman v. Mutual Life Ins. Co. of N. Y., supra; Shabotzky v. Equitable Life Assur. Soc., supra).
Furthermore, any comparison between plaintiff’s capacity to earn money before the accident and her salary potential in other forms of employment after the accident which uses her salary at the time of the accident as a standard of the former, is unfair. Until her engagement in “ My Fair Lady ”, a show of extraordinary box-office appeal, plaintiff had been earning approximately $85 weekly, an amount comparable to what she might reasonably expect to earn in other forms of employment. In addition, as an acrobatic dancer, whose professional experience had been limited to chorus type performances, plaintiff at the time of her accident was still subject to the vicissitudes of show business.
The court also finds significant the fact that plaintiff has demonstrated an ability to perform at other types of employment. Her most recent endeavor, as a teacher in a school for modeling and charm, a position for which she has acquired a *66 license, required plaintiff to give instructions in make-up and hair styling as well as lectures in diction and poise — skills no doubt acquired during those years devoted to the dance and of which, presumably, plaintiff was possessed at the time of her accident. There is no evidence that plaintiff thereafter acquired them. The court must conclude, therefore, that plaintiff was as qualified for employment of this nature on May 2, 1962 as she was when she began to teach in 1964.
Moreover, inasmuch as the clause under consideration specifically limits the right to indemnification “ for the period” an assured is disabled from each and every occupation, and since plaintiff’s claim is premised not upon physical disability but upon her disqualification by training, education, or experience from any employment other than dancing, plaintiff’s rights to indemnity under the second-quoted provision would, in any event, terminate upon the acquisition at some later date of qualifications for employment other than dancing. The fact is, however, that the record before the court amply supports the conclusion that plaintiff on May 2, 1962 was, within the contemplation of the disability clause herein, reasonably qualified for employment in occupations other than dancing.
Accordingly, upon the evidence and the applicable law, the court, sympathetic though it is to the fact that, but for a fortuitous circumstance, plaintiff might still be pursuing a career in dancing, must limit plaintiff’s recovery to the amount sought under the first-quoted clause for which liability is conceded in the sum of $2,074.64. Inasmuch as that sum represents a total computation of weekly benefits of $39.89 for 52 weeks, the court, in accordance with its previous ruling made during the course of trial, awards plaintiff the sum of $39.89 for the period commencing May 9, 1961, and terminating May 2, 1962, with appropriate interest thereon.