Patrick MOSSA, Plaintiff,

v.

PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, Defendants.

No. CV96–5996 (RJD).

United States District Court, E.D. New York.

Feb. 11, 1999.

As Corrected February 16, 1999.

Richard J. Quadrino, Eve–Lynn Gisonni, Quadrino & Schwartz, P.C., Garden City, NY, for plaintiff.

Edward C. Cerny III, Lane & Mittendorf LLP, New York City, for defendant.

## MEMORANDUM OF DECISION

DEARIE, District Judge.

Plaintiff Patrick Mossa ("plaintiff" or the "insured") brought this action against Provident Life and Casualty Insurance Company ("defendant" or the "insurer") to recover total disability benefits under a disability policy (the "Policy") purchased from defendant. Defendant moves for summary judgment, arguing that plaintiff is able to engage in any number of gainful occupations and is therefore not "totally disabled" within the meaning of the Policy. For the reasons set forth below, defendant's motion is denied.

## FACTS

In January 1973, plaintiff earned a degree in economics from Queens College. Deposition of Patrick Mossa ("Pl.Dep.") at 9, Exh. D, Cerny Aff. From 1976 to 1982, plaintiff co-owned and operated a retail store that sold fruits and vegetables. *Id.* Beginning in March, 1983, plaintiff was employed by Mar-Bev Mechanical, Inc. ("MarBev"), a plumbing, heating and air conditioning contractor. Defendant's Rule 56.1 Statement ("Def.R.56") ¶ 12; Pl. Dep. at 17–18. MarBev is co-owned by plaintiff's wife, Beverly Petrosino, and Marilyn DeGasperis, the wife of another employee of MarBev. Pl. Dep. at 7–8.

On or about January 9, 1989, plaintiff applied to defendant for disability insurance. Amended Pre–Trial Order ("PTO") ¶ 3. On March 9, 1989, defendant issued to plaintiff Disability Income Policy No. 36–295–6002235, which provided for the payment of $5,000 in

monthly benefits upon submission of proof that plaintiff is disabled within the meaning of the Policy. PTO ¶ 4.

The Policy initially provides benefits in the event that due to sickness or injury "you [the Insured] are not able to perform the substantial and material duties of your occupation (hereinafter "own occupation" provision)."[1] *See* Policy, Exh. B, Affidavit of Edward Cerny III ("Cerny Aff."), counsel for defendant, dated June 5, 1997. After benefits have been paid for two years, the Policy provides that plaintiff is entitled to continued benefits of $5000 per month until age 65 if due to sickness or injury "you are not able to engage in any gainful occupation in which you might reasonably be expected to engage because of education, training or experience (hereinafter "other occupation" provision)." *Id.*

From March 1989 through July 1993, plaintiff paid premiums to defendant. PTO ¶ 11. On March 19, 1993, while working as a steamfitter on a construction site for Mar-Bev, plaintiff fell from the height of one story and fractured both knee caps. Affidavit of Patrick Mossa ("Pl.Aff.") ¶ 2; Defendant's Reply Memorandum in Support of Summary Judgment ("Def.Reply") ¶ 6. On or about March 29, 1993, plaintiff properly submitted a claim for benefits under the Policy. PTO ¶ 12. On July 17, 1993, defendant commenced the payment of monthly disability benefits[2] and continued to pay plaintiff a total of $125,000 in disability benefits for two years and one month, ending in September, 1995. PTO ¶ 15.

Because the Policy provides that premium payments are waived during the period of disability, the parties agree that plaintiff owed no premium payments between July 1993 and September 1995. PTO ¶ 11. The Policy further provides that coverage will lapse in the event that premiums are not paid before the end of the 31 day grace period after a premium due date. Exh B, Cerny Aff. In a November 6, 1995 letter to plaintiff, defendant informed plaintiff that based upon its records, plaintiff was able to return to "gainful occupation." Exh. N, Cerny Aff. The letter concluded that "since benefits are no longer payable you will be billed for the next premium due on your policy, [sic] in order to maintain this policy in force the premium must be paid." Exh. N, Cerny Aff.

Defendant claims that because plaintiff has paid no premium following defendant's November 1995 letter, the Policy has lapsed. Plaintiff, on the other hand, claims that he meets the requirements of "total disability" under the "other occupation" provision and that defendant's discontinuation of payments constitutes a breach of the insurance contract.

## DISCUSSION

The parties agree that New York law governs this diversity action. *See, e.g., Sphere Drake Ins. Co. v. P.B.L. Entertainment, Inc.,* 30 F.3d 21, 22 (2d Cir.1994). It is established in New York that "[r]ules for construction of contracts of insurance do not differ from those applied to the construction of other contracts," *McGrail v. Equitable Life Assur. Soc.,* 292 N.Y. 419, 424, 55 N.E.2d 483 (1944), including the well-accepted maxim that any ambiguity must be resolved against the drafter. *Greaves v. Public Serv. Mut. Ins. Co.,* 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390 (1959). Thus, New York decisions comport with the "hornbook rule that policies of insurance ... are to be liberally construed in favor of the insured," *Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 678, 389 N.Y.S.2d 565, 358 N.E.2d 258 (1976), and recognize that "[a] construction favorable to the insurer will only be sustained where it is the sole construction which can fairly be placed upon the words employed." *Board of Educ., Yonkers City School Dist. v. CNA Ins. Co.,* 647 F.Supp. 1495, 1502 (S.D.N.Y.1986), quoting *Cantanucci v. Reliance Ins. Co.,* 43 A.D.2d 622, 349 N.Y.S.2d 187, 191 (3rd Dep't), *aff'd mem.,* 35 N.Y.2d 890, 364 N.Y.S.2d 890, 324 N.E.2d 360 (Ct.App.1974).

---

1. Occupation is defined in the Policy as "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled." Exh. B, Cerny Aff.

2. Because the Policy contains a 90–day "elimination period", defendant's payments did not begin until July 1993.

"When interpreting terms in insurance policies, we are to construe the language at issue as would the ordinary [person] on the street or ordinary person when he [or she] purchases and pays for insurance, or, in a case such as this one involving a policy issued to a business, by examining the reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract. The term is not given a narrow, technical definition by the law. It is construed, rather, in accordance with its understanding by the average [person] ... who, of course, relates it to the factual context in which it is used." *First Investors Corp. v. Liberty Mut. Ins.*, 152 F.3d 162, 167 (2d Cir.1998), quoting *Michaels v. Buffalo*, 85 N.Y.2d 754, 757, 628 N.Y.S.2d 253, 651 N.E.2d 1272 (1995) (internal citations and quotation marks omitted).

As with most contracts, when an insurance policy's terms are clear and unambiguous, they must be read accordingly. The Court may not "disregard clear provisions which the insurers inserted in the policies and the insured accepted, and equitable considerations will not allow an extension of coverage beyond its fair intent and meaning." *Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 239, 476 N.Y.S.2d 519, 465 N.E.2d 26 (1984) (per curiam) (citation omitted). The construction of unambiguous provisions in an insurance policy is solely a question of law for the court. *Caporino*, 62 N.Y.2d at 239, 476 N.Y.S.2d 519, 465 N.E.2d 26. The Court also is entrusted with the construction of ambiguous provisions unless "determination of the intent of the parties depends on the credibility of extrinsic evidence, or on a choice among reasonable inferences to be drawn from extrinsic evidence." *Hartford Acc. & Ind. Co. v. Wesolowski*, 33 N.Y.2d 169, 172, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973); *Stainless, Inc. v. Employers' Fire Ins. Co.*, 69 A.D.2d 27, 418 N.Y.S.2d 76, 79 (1st Dept.), *aff'd mem.*, 49 N.Y.2d 924, 428 N.Y.S.2d 675, 406 N.E.2d 490 (1980). *See Proteus Books Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 509 (2d Cir.1989).

Whether an insurance policy is clear or ambiguous is a threshold question of law for the court to decide. *See Pantone, Inc. v. Esselte Letraset, Ltd.*, 878 F.2d 601, 605 (2d Cir.1989); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1026 (2d Cir.1991). Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning. *Werbungs*, 930 F.2d at 1026. *See United States Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569, 572 (2d Cir.1991) ("As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading.").

### A. The Construction of the Policy

The Policy provides, in pertinent part:

After benefits have been paid for two years for a period of disability, Total Disability or totally disabled means that due to Injuries [3] or Sickness [4]:

1) you are not able to engage in any *gainful* occupation in which you might *reasonably* be expected to engage because of *education, training, or experience* (emphasis added); and

2) you are receiving care by a Physician which is appropriate for the condition causing the disability.

Defendant insists that the absence of an explicit "salary proviso" in the Policy precludes any fact-intensive inquiry into the question in what "gainful occupation" it would be reasonable to expect plaintiff to engage. Def.Mem. at 15. Defendant asserts that the word "reasonably" in the Policy does not modify "gainful" or any concept related to salary or compensation. *Id.* Indeed, according to defendant, the Policy does not insure plaintiff's ability to obtain a "reasonably comparable job" or even a " reasonably comparable wage." Rather, defendant asserts that " 'reasonably' modifies 'education, training or experience.' " *Id.* at 2, 15–20. However, defendant does not explain what, if

---

**3.** The Policy defines Injuries as "accidental bodily injuries occurring while your policy is in force." Exh B, Cerny Aff.

**4.** "Sickness means sickness or disease which is first manifested while your policy is in force ..."

any, import the word "reasonably" adds to the phrase "education, training or experience" that would give it any meaning different from a provision lacking the word "reasonably."

Plaintiff, for his part, insists that the "other disability" provision is ambiguous or, in the alternative, its plain and reasonable interpretation "requires that it be construed to include an analysis of the insured's salary history and the availability of the proposed occupations in the insured's geographical area." Pl. Mem. at 23.

While no published New York case has interpreted a disability policy containing this precise provision, a number of long-established New York cases have confronted similar disability policies. *See, e.g., Waldman v. Mutual Life Ins. Co.,* 252 A.D. 448, 299 N.Y.S. 490 (2d Dep't 1937); *Shabotzky v. Equitable Life Assur. Soc.,* 257 A.D. 257, 12 N.Y.S.2d 848 (1st Dep't 1939); *Starr v. Equitable Life Assur. Soc.,* 257 A.D. 261, 12 N.Y.S.2d 953 (1st Dep't 1939); *Muzio v. Metropolitan Life Ins. Co.,* 249 A.D. 177, 291 N.Y.S. 955 (2d Dep't 1936). The hallmark of these cases is that they address "more restrictive policies [lacking any 'education, training or experience' proviso] which covered only disability from any occupation." *Hoffert v. Commercial Ins. Co. of Newark,* 739 F.Supp. 201, 204 n. 5 (noting that policies with an "education, training or experience" proviso "came into use because the courts of many states were engrafting such interpretations into the more restrictive policies . . .").

The parties rely on two somewhat more recent cases to support their construction of the "other occupation" provision. Defendant asserts that the case of *Tschida v. Continental Cas. Co.,* 48 Misc.2d 61, 264 N.Y.S.2d 72 (Sup.Ct. New York Co.1965), *modified on other grounds, otherwise aff'd,* 30 A.D.2d 941, 293 N.Y.S.2d 948 (1st Dep't 1968) is controlling, and that it stands for the proposition that salary comparisons are not proper considerations in construing "other occupation" provisions. The Court disagrees.

The policy in *Tschida* initially provided for benefits in the event the plaintiff was unable to engage in her own occupation. *Id.* at 73–74. After a period of 52 weeks, the policy provided for the payment of benefits in the event plaintiff was "prevented by reason of said injury from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by training, education or experience." *Id.* At the time of the onset of her injury, Ms. Tschida was a professional dancer. Despite her various employments during and after the initial 52 week period of disability (as either a full or part-time model, receptionist, salesperson, and teacher), plaintiff claimed to be "reasonably qualified by training, education or experience" for only one occupation, dancing. *Id.* at 74.

After a plenary trial, the court concluded that plaintiff was "at least qualified to engage in any of the common forms of employment available to girls of a similar age and background. Furthermore, her injury was not of a type which would, because of undue strain, disable her from such employment." *Id.* at 76. Defendant urges that the *Tschida* court's construction of the "other occupation clause" controls this Court's construction of the Policy. The court stated:

> The Court is not unmindful that such employment opportunities are not as rewarding financially as professional dancing . . . Unfortunately, the clause under consideration was not intended to indemnify such a contingency. It is sufficient to bar a recovery thereunder that the assured can qualify for other employment which, in a fair sense, is remunerative.

*Id.*

For a number of reasons, the *Tschida* court's construction of the Tschida policy does not bind this Court to adopt defendant's proposed construction of the Mossa policy. First, the policy language confronted by the *Tschida* court is facially more restrictive than the Policy in the instant case. *Compare Tschida,* at 74 (insured must be prevented "from engaging in each and every occupation for wage or profit for which he is reasonably qualified") *with* Policy (insured must be "[un-]able to engage in any gainful occupation in which he might reasonably be expected to engage").

Second, the *Tschida* court cited as primary authority for its construction of the clause two early New York cases, *Waldman v. Mutual Life Ins. Co. of New York*, 252 A.D. 448, 299 N.Y.S. 490 (2d Dep't 1937) and *Shabotzky v. Equitable Life Assur. Soc.*, 257 A.D. 257, 12 N.Y.S.2d 848 (1st Dep't 1939), both of which addressed far more restrictive policy language than in the instant case, *see Waldman*, at 493 (policy provides benefits only in event that the insured is prevented "from performing any work for compensation, gain, or profit, and from following any gainful occupation") and neither of which confronted any "training, education or experience" language.

Finally, despite its ostensibly unequivocal holding that "other occupation" clauses preclude a salary comparison, the *Tschida* court proceeded to temporize its statement by actually making a salary comparison. The court stated:

> Furthermore, any comparison between plaintiff's capacity to earn money before the accident and her salary potential in other forms of employment after the accident *which uses her salary at the time of the accident as a standard of the former*, is unfair. Until her engagement in 'My Fair Lady', a show of extraordinary box office appeal, *plaintiff had been earning approximately $85 weekly, an amount comparable to what she might reasonably expect to earn in other forms of employment*. In addition ... plaintiff at the time of her accident was still subject to the vicissitudes of show business (emphasis added)."

*Tschida*, at 76. This Court is not bound to construe the "other occupation" provision of the Mossa Policy, which in any event is facially dissimilar to the provision in *Tschida*, to preclude a comparative salary analysis.

Plaintiff relies on the more recent case of *Hoffert v. Commercial Ins. Co. of Newark, NJ*, 739 F.Supp. 201 (S.D.N.Y.1990) for the proposition that an examination of plaintiff's salary history and a comparable wage analysis is appropriate. In *Hoffert*, the court interpreted a disability policy that had been issued to a general and vascular surgeon.

The policy provided that "if disability ... shall prevent the Insured from engaging in any occupation or employment for which he is fitted by reason of education, training and experience ... such disability shall be deemed Permanent Total Disability." *Id.* at 202. When the plaintiff injured his shoulder, the insurance company conceded that he was no longer able to perform surgery. However, the insurance company claimed that plaintiff suffered no Permanent Total Disability preventing him from engaging in a variety of occupations proposed by the insurance company's vocational specialist, including a job as a surgical consultant to patients seeking a second opinion and teaching at a medical school. *Id.* at 205–06.

The *Hoffert* court disagreed. The court began its analysis by noting that:

> while one old New York case did equate the word 'fitted' with 'qualified' ... in light of the total phraseology used here, we view the requirement as requiring far more than qualifications. As a licensed physician and surgeon, even with his substantial physical impairment, he is 'qualified' to do a number of medical jobs. The issue is whether he is "fitted by reason of education, training and experience" to them.

*Id.* at 205. Rather than finding the "other occupation" provision ambiguous,[5] the *Hoffert* court interpreted the plain meaning of the provision to include an analysis of the plaintiff's salary history and the availability of the proposed occupations. *Id.* at 206. Specifically, the court concluded that consulting work was not suitable, because "it is clear that the availability of such work is not great." *Hoffert*, at 206. Finally, the Court agreed with the plaintiff that "the suitability of other employment must be measured financially." *Id.*

While *Hoffert* and *Tschida* appear to be the only published New York cases construing a disability policy similar to plaintiff's Policy, other jurisdictions have analyzed similar disability polices at great length. The overwhelming majority of other jurisdictions hold that "other occupation" provisions, "al-

---

**5.** The court noted that "were we to find the policy language ambiguous it would obviously be construed against the insurer who drafted it (citation omitted)." *Id.* at 205, n. 8.

though [they are] framed in terms of disability to perform or engage in any occupation for wages or profit, [are] generally construed to relate to an occupation in which the insured has been trained and has worked during his working life; or it may relate to an occupation that, as a practical matter, the insured could follow considering his age, training, experience, reputation, station in life, and other relevant circumstances." Earl L. Kellett, LL.B., Annotation, *What constitutes permanent or total disability within coverage of insurance policy issued to physical laborer or workman*, 32 ALR3dFED 922 (1971–1997).

Courts have used differing language to explain the role of salary considerations in assessing what other type of available work would preclude the insured from recovering under "other occupation" disability policies.[6] For example, courts have variously stated that:

> the insured must be incapacitated from following any substantial or remunerative occupation for which he is fitted or qualified, mentally or physically, and by which he is able to earn a livelihood (citation omitted); that he must be unable to follow any other occupation for which he may be fitted by education, training, and experience, which may yield a reasonably substantial gain or profit, rising to the dignity of an income or livelihood (citation omitted); that he must be unable to engage in any occupation similar to that in which he was ordinarily engaged before the disability, or one for which he may fit himself within a reasonable time (citation omitted); that he must be unable to engage in his usual employment or such other employment, if any, reasonably approximating the

same livelihood, as he might fairly be expected to follow in view of his station, circumstances, training, aptitude, and physical and mental capabilities (citation omitted); and that he must be prevented from engaging in any occupation and performing any work of substantially the same kind and nature as he was accustomed and able to perform prior to his affliction; that the dignity, permanency, and amount of income which can be earned from the substituted or alternative occupation are also considered (citation omitted).

A.M. Vann, Annotation, *Total disability or the like as referring to inability to work in usual occupation or in other occupations*. 21 A.L.R.FED3d 1155 (1969–1997). *See also Kooker v. Benefit Ass'n of Ry. Employees*, 246 N.W.2d 743, 745 (N.D.1976) (noting that "[i]ncome which could be derived from another occupation is an important consideration" in determining whether plaintiff is entitled to recovery under "other occupation clause," court holds that plaintiff may recover if available jobs "do not return a compensation reasonably comparable to that earned in insured's former occupation"); *Mason v. Loyal Protective Life Ins. Co.*, 249 Iowa 1167, 91 N.W.2d 389, 392 (1958) (where policy barred recovery if insured could engage in his "regular occupation or any gainful occupation for which he is reasonably fitted," court holds that any occupation must reasonably approximate the same livelihood as the insured's regular occupation).

■ This Court adopts the reasoning of the majority of jurisdictions and finds that an ordinary person deciding whether to purchase such a disability insurance policy would reasonably expect that he was insuring

---

**6.** Courts and legal scholars have discerned three general approaches to disability policies, also known as 'general' or 'nonoccupational' policies, that are similar to plaintiff's Policy. The majority of jurisdictions adhere to an "intermediate view", and hold that " 'total disability' is a relative term in that its application to any particular case must relate to the insured's usual or customary occupation, and to his abilities and qualifications." 21 A.L.R.FED3d 1155 (1969–97). A second group of cases holds that even under a general disability provision, " 'total disability' exists whenever the insured is unable to perform the duties of his usual or customary occupation

... under this 'occupational view,' the insured's ability to perform the duties of other occupations would not bar his recovery. Thus, the courts adhering to this view have construed general disability provisions, insuring against the inability to perform the duties of 'any occupation,' as if they were occupational disability provisions which insured against the inability of the insured to perform the duties of his occupation ..." *Id.* A third group of cases follows a "strict view" of the term "total disability," holding that the insured must be completely prevented from engaging in any occupation whatsoever in order to be entitled to recover under the policy. *Id.*

against the inability to engage in a living wage, not merely a job paying *any* wage. *See Mason v. Loyal Protective Life Ins. Co.*, 249 Iowa 1167, 91 N.W.2d 389, 392 (1958); *Kooker v. Benefit Ass'n of Ry. Employees*, 246 N.W.2d 743, 745 (N.D.1976). To hold otherwise would be to ignore the purposes for which individuals purchase disability insurance policies. Like the *Hoffert* court, therefore, this Court construes the plain meaning[7] of the entire "other occupation" provision of the Policy to permit the factfinder to consider plaintiff's salary history, as well as a wage analysis of other available occupations, to determine in what other "gainful occupation ... [plaintiff] might reasonably be expected to engage because of [his] education, training or experience." *See* Policy, Exh. B, Cerny Aff.

### B. *Disputed Issues of Material Fact Preclude Summary Judgment*

A motion for summary judgment should be granted only where "there is no genuine issue as to any material fact." Fed.R.Civ. Pro. 56(c). In evaluating these motions, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal citations omitted). "The burden on the moving party may be discharged by showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* The burden of demonstrating the existence of a genuine issue of material fact then shifts to the non-moving party. *See id.*

■ The severity of plaintiff's disability and the extent of his prior "education, train-

ing and experience" are factual issues central to the determination in what occupations plaintiff might reasonably be expected to engage. However, the parties' differing interpretations of the available evidence, as evidenced by their Rule 56.1 statements, demonstrate that numerous questions of fact exist which require a trial of this action.

### Conclusion

The Court construes the plain meaning of the entire "other occupation" provision to permit the factfinder to consider plaintiff's salary history, as well as a wage analysis of other available occupations, in order to determine in what other "gainful occupation ... [plaintiff] might reasonably be expected to engage because of [his] education, training or experience." In addition, the Court denies defendant's motion for summary judgment because there remain questions of fact regarding the severity of plaintiff's injury and the extent of his "education, training and experience".

SO ORDERED.

---

7. The Court notes that the result would be the same were it to find that reasonable minds could differ as to the provision's meaning and that the provision is therefore ambiguous. *See Werbungs*, 930 F.2d at 1026. Under such circumstances, the Court could legitimately construe the ambiguous provision to permit the factfinder to consider both *plaintiff's salary history and the salary of other available jobs. See Proteus Books Ltd.*, at 509.