ÆTNA LIFE INSURANCE COMPANY AND PACIFIC MUTUAL
LIFE INSURANCE COMPANY v. ORR.

4-7009—4-7010 . 169 S. W. 2d 651

Opinion delivered March 29, 1943.

*O. C. Brewer, George K. Cracraft, John M. Lofton,
Jr.,* and *Owens, Ehrman & McHaney,* for appellants.

*H. H. Rightor, Jr., J. M. Jackson* and *Coleman,
Mann, McCulloch & Goodwin,* for appellee.

McFADDIN, J. These are companion cases involving
the question of appellee's claim for total and permanent
disability under policies issued by the respective appel-
lants. Appellee was a practicing physician and surgeon,
and on August 22, 1941, suffered an X-ray burn on the
thumb and several fingers of his right hand, which burn,
he claims, has totally and permanently disabled him.
The cases were filed on April 3, 1942, and tried on May

21, 1942. The Ætna case was tried before a jury and resulted in a verdict and judgment for the plaintiff. In the Pacific Mutual case, there was a stipulation that the case should be heard by the court on the same record as in the Ætna case. The Pacific Mutual case likewise resulted in a finding and judgment for the plaintiff.

The Ætna policy, issued in December, 1925, applies if the insured "becomes totally and permanently disabled by bodily injuries or disease, and is thereby prevented from performing any work or conducting any business for compensation or profit." The Pacific Mutual policy, issued in 1930, insures against "continuous necessary and total loss of all business time."

The plaintiff testified, on direct examination, that he was 58 years old, and had been a practicing physician and surgeon in Phillips county since 1910; that on August 22, 1941, he suffered an X-ray burn to his thumb and several fingers of his right hand; that the injury became apparent on September 6, 1941, when he lost the nails on some of his fingers; that he was treated by various specialists; that as a result of the X-ray burns he was unable to do work that required both hands; that he could do no surgery; that he could do no obstetrics; that his hand was quite a bit improved, but that it was still tender; that about two months prior to the trial, the index finger started breaking down again and had become progressively worse; that he suffers intense pain and has to apply local applications and take aspirin; that he is not now engaged in general practice; that he is doing some practice in medicine; that he has done no surgery since his injury.

The testimony of other physicians and surgeons offered by the plaintiff was to the effect that Dr. Orr could not use his right hand in the usual way; that it would be difficult for him to make an examination with his left hand; that the condition of his right hand was permanent and one of the fingers should be amputated; that it was impossible for Dr. Orr to practice surgery or obstetrics; that he is suffering pain and this pain impairs his ability to diagnose cases, and that the plaintiff is

unable to practice medicine in his usual and customary way.

Dr. Orr admitted that the audit made by the defendant company of the books of Dr. Orr showed cases that he had handled since the burns; and that for April, 1942, he charged patients for treatment, $433; for March, 1942, $520; for February, 1942, for medical cases alone, $393.50; January, 1942, $382; that for the seven and one-half month period from September, 1941, (the date of the injury) up to and including April, 1942, he had charged patients for treatment, $3,199; that in addition to those charges, he did some charity practice which was not shown. Dr. Orr admitted that he had been a general practitioner and surgeon, and that if a patient came to him with a strictly medical problem the patient was treated. He admitted that he suffered no disability other than the disability from the X-ray burn, and that he suffers just as much pain if he stays at home and does nothing, as if he continues his work. In April, 1942, he saw a total of 112 patients; in March, 136 patients; in February, 114 patients; in January, 83 patients; that in March, 1942, he issued 154 prescriptions at one drug store alone; and that for the four months of January, February, March and April, 1942, he issued a total of 469 prescriptions; that he had one or more patients in the Helena Hospital on practically every day from September 26, 1941, to and including the time of the trial, and that he treated patients for hypotension and other ailments; that although he was suffering constant pain from September, 1941, up to the time of the trial, he had been engaged in the practice, with the exception of surgery and cases that required the use of the right hand.

Cross-examination of plaintiff's witnesses developed that if Dr. Orr had seen the number of patients that he admitted having seen in 1942, then he was engaged in the practice of medicine; and that if Dr. Orr had written the admitted number of prescriptions in 1942, then he had been diagnosing cases; that there was a physician in Helena at that time practicing medicine after the loss of an arm; and that another physician in Helena had lost a finger and had continued in the practice; that all three

of Dr. Orr's fingers had improved since the fall of 1941; that if the more seriously damaged finger were amputated, it would relieve the pain in the distal part of the finger; that Dr. Orr would have the same pain regardless of whether he was in his office or in bed; that in most such cases there is finally relief from pain; that there are certain types of general practice that Dr. Orr could do and had been doing; that since his injury, Dr. Orr had been practicing medicine and his results with his patients checked up very favorably with the results of other doctors, and with the results of Dr. Orr's treatment of his patients in previous years.

The cases are before us on assignments of error, to-wit: (1) The action of the trial court in the giving and refusing of certain instructions; (2) the failure of the trial court to instruct a verdict for the defendant; (3) the fees allowed plaintiff's attorneys.

We proceed to a decision of the first of these assignments.

### 1. Error of the Trial Court in Giving and Refusing Certain Instructions.

Plaintiff's instruction No. 4 as given provided: "You are instructed that the law does not require one to perform duties at the peril of his health or if their performance entails pain and suffering which a person of ordinary prudence and fortitude would be unwilling and unable to endure; or if their performance aggravates or increases the injury, if any, from which he suffers. If, therefore, you believe from a preponderance of the evidence that the plaintiff is unable to perform in the customary way the usual and ordinary duties of his profession as a physician and surgeon except at the peril of his health, or without thereby producing pain and suffering such as a person of ordinary fortitude would be unwilling and unable to endure, or without aggravating or increasing the injury, if any, from which he suffers, and that such condition will be permanent, then the plaintiff is totally and permanently disabled within the meaning of the policies sued on."

Against this instruction, the defendant objected generally and specifically because there was (1) no testimony in the record that the performance of the doctor's duties would impair his health in any manner whatsoever, and (2) no testimony that the performance of the doctor's duties aggravates or increases his pain. These specific objections were well taken, and this instruction should not have been given, and the giving of the instruction was prejudicial error because the proof showed that Dr. Orr suffered the same pain whether he worked or whether he didn't work, and there was nothing to show that doing the work he was doing tended to aggravate or increase his injury. So, for the error in giving this instruction, the case should be reversed and remanded for a new trial.

In view of the fact that the cause must be reversed and remanded for a new trial, we think it appropriate to point out that in the next trial the question of partial or total disability should be submitted to the jury. The policies here involved do not insure Dr. Orr against partial disability; and the question whether Dr. Orr is partially or totally disabled is a question which this court does not now decide.

In passing on the question of total disability, consideration must be given not only to the specific wording of the policy, but also to the business or profession of the insured when the policy was issued and when the claim arose. What would totally disable or incapacitate one person might not seriously impair some other person. For instance: the loss of a toe might be a total permanent disability to a professional dancer, but might have no such effect upon a lawyer or a school teacher. Likewise, the loss of a finger might be a total permanent disability to a professional pianist, but would have no such effect upon a lawyer or school teacher. These sketchy illustrations show that each case has to be determined on its own particular facts. As is stated in 29 Am. Jur. 874: "Of course, total disability is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case; consequently, what constitutes total disability in a particular case depends largely upon the

occupation, employment and capabilities of the person insured."

Chief Justice HART, speaking for this court in *Ætna Life Insurance Company* v. *Spencer*, 182 Ark. 496, 32 S. W. 2d 310, recognized this obvious truth when he said: "Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way."

In each of his applications for the insurance policies here involved, Dr. Orr listed himself as a "Physician and Surgeon." At the time of the injury, Dr. Orr was devoting a portion of his talents to surgery and a portion to medicine. In Webster's New International Dictionary, a physician is defined as: "A person skilled in physic or the art of healing; one duly authorized to treat diseases especially by medicine; a doctor of medicine; often distinguished from a surgeon"; and a surgeon is defined as: "One whose profession or occupation is to cure diseases or injuries of the body by manual operation; one who practices surgery"; and surgery is defined as: "That branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries."

It was developed in the proof that prior to his injury Dr. Orr was a skilled surgeon, and handled the surgery cases for other doctors in Helena. This art of surgery is separate and distinct from the work of a physician. It developed in the proof that prior to his injury Dr. Orr also was a physician, which profession is sometimes called internal medicine. Thus Dr. Orr had two professions: (a) surgeon, and (b) physician.

In 29 Am. Jur. 875, the rule is stated: "In some instances, also, the insured has been engaged in more than

one occupation, and in such a case, under a policy providing benefits for disability to prosecute any and every kind of business pertaining to the occupation under which the policy is issued to the insured, the disability must extend to all such occupations.''

In Couch's Cyclopedia of Insurance Law, § 1687, it is stated: ''If one is insured in two occupations, such, for instance, as those of 'leather cutter and merchant,' he must be disabled as to both occupations to warrant a recovery under a policy providing indemnity for any injury which shall wholly disable or prevent him from the prosecution of any and every kind of business pertaining to the occupation in which he is insured.''

The trial court in the instructions given at the request of the plaintiff treated physician and surgeon as one profession; although the defendant specifically pointed out that if Dr. Orr could still engage in the practice of medicine, then he was not totally disabled. To recover in this case, Dr. Orr must be disabled both as a physician and also as a surgeon. The jury should have been instructed that: if the plaintiff be disabled from doing a substantial part of the material acts necessary to the prosecution of his profession as a physician in substantially his customary and usual manner, then, and then only, could the jury find he was totally disabled as a physician; and if the plaintiff be disabled from doing a substantial part of the material acts necessary to the prosecution of his profession as a surgeon in substantially his customary and usual manner, then, and then only, could the jury find he was totally disabled as a surgeon; and if he was not so disabled both as a physician and also as a surgeon, then he could not be found to be totally disabled.

For the errors in the instructions as herein pointed out, these causes must be reversed and remanded.

2-3.  Instructed Verdict and Excessive Attorneys Fee.

Since the cases are reversed and remanded for a new trial because of the errors regarding the instructions, we specifically refrain from passing on the other questions; and we point out this fact, so that we will

not be precluded from considering either of these matters in event of any other appeal herein.

Reversed and remanded.

The Chief Justice concurs in part and dissents in part.