88 N.J. Super. 57 (1965)
210 A.2d 641
BERNARD J. SHUMAN, PLAINTIFF-APPELLANT,
v.
NATIONAL CASUALTY COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1964.
Decided June 1, 1965.
*58 Before Judges GAULKIN, FOLEY and COLLESTER.
Mr. Benjamin A. Rimm argued the cause for appellant.
Mr. Michael D. Loprete argued the cause for respondent (Messrs. McCarter & English, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Following a heart attack on December 6, 1959, plaintiff Bernard J. Shuman, a physician specializing in pediatrics, applied for and was granted a hospital residency for training in the field of psychiatry. When he was disallowed benefits under an "Extended Professional Disability Policy" issued by defendant he brought suit. He appeals from a summary judgment entered by the Superior Court, Law Division dismissing his action.
*59 The facts in the case are sufficiently set forth in the opinion of the court below, reported at 80 N.J. Super. 310 (Law Div. 1963), and need not be repeated here.
The "Extended" policy, which is the subject of the litigation provides, inter alia:
"If such sickness shall wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to his occupation or profession * * * for twenty four (24) consecutive months, the Company will pay periodically the monthly sickness benefit, as written in the policy schedule, commencing on the first (1st) day of the twenty-fifth (25th) month of such total disability and for the period the Insured shall be wholly and continuously disabled from engaging in any gainful occupation for which the Insured is reasonably fitted or qualified * * * but not to exceed sixty (60) consecutive months as the result of any one sickness." (Emphasis added)
A salient point leading to the conclusion reached by the trial court was the receipt by plaintiff of $12,000 per year during the period of his residency. This amount constituted a special trainee stipend resulting from a grant by the National Institute of Mental Health, a subagency of the United States Government, under a program described as "Grants in Support of Psychiatric Training Programs for General Practitioners and Other Physicians in Practice." The purpose of the program is twofold: to foster the development of postgraduate education and training in psychiatry for physicians who plan to continue in other fields of medicine, and "to provide support at an adequate level" for psychiatric residency training of physicians in practice who intend to become psychiatrists. Administration of the program is the responsibility of the grantee institution, and this includes the selection from available candidates of the persons who are to receive the grant. The maximum stipend under the program is $12,000 per year.
It is conceded that the $12,000 received by Dr. Shuman in each year of his residency was subject to federal income tax, and that he did not pay for tuition, books and laboratory or other fees. To be compared with the $12,000 per annum is *60 the stipulation that prior to his heart attack Dr. Shuman earned from his practice of pediatrics $20,890.30 in 1957, $22,187.36 in 1958, and $22,152.81 in 1959.
The Law Division held that Dr. Shuman's residency was "any gainful occupation for which the Insured is reasonably fitted or qualified" under the provisions of the extended policy, and granted defendant's motion for summary judgment. We believe that this was error and that the question was one for the jury.
In our view, the period of formal study and training for qualification in psychiatry, under the factual setting here presented, does not necessarily constitute a "gainful occupation." The contrary proposition would bring within the category of "gainful occupation" any course of study subsidized with a living wage paid to the student and related in some manner to his prior field of endeavor. Any formal educational training ultimately benefits the student intellectually and, in most cases, financially, but to term such a period of study a "gainful occupation," even with a substantial stipend attached, runs contrary to both common understanding and accepted usage. Mason v. Loyal Protective Life Insurance Company, 249 Iowa 1167, 91 N.W.2d 389, 391 (Sup. Ct. 1958); cf. Aetna Life Ins. Co. of Hartford, Conn. v. Gullett, 262 Ky. 1, 89 S.W.2d 1, 3 (Ct. App. 1936).
In reaching this determination we find Mason v. Loyal Protective Life Insurance Company, supra, persuasive. In that case Dr. Mason, a general practitioner, insured against inability to engage in "a gainful occupation for which he is reasonably fitted," was forced to terminate his practice because of "nerve deafness." Shortly thereafter he obtained a residency in radiology, which paid him $2,712 the first year, $3,195 the second year, and $3,550 the third year. The Iowa Supreme Court held proper the denial of a motion for directed verdict made by the insurer, rejecting the insurer's argument that the residency in radiology was a "gainful occupation for which he is reasonably fitted." The court stated,
*61 "The three years residency is a learning period which materially differs from the general practice of medicine.

* * * * * * * *
Physicians do not make careers out of being residents. According to the chief of the radiological service of the `VA' hospital, `it is a training period, like going to school.' The program is open only to those with an M.D. degree.

* * * * * * * *
If it were not for the money plaintiff receives during his residency certainly the finding would be justified it is a training period like going to school, as the undisputed evidence shows, not a gainful occupation for which plaintiff was reasonably fitted. Indeed the training is for the purpose of fitting plaintiff for an occupation different from the one he previously pursued, the only one for which he had been fitted. Going to school usually helps bring ultimate financial gain to the student. But in the ordinary, popular sense it is hardly a gainful occupation.
Nor do we think the essential character of this residency as a training or educational period becomes, as a matter of law, by plaintiff's receipt of the modest payments allowed him, a gainful occupation for which he is reasonably fitted." (91 N.W.2d, at p. 391)
Defendant emphasizes that in Mason the payments received by the plaintiff for the first year of his residency approximated only one-tenth of his earnings in the last full year of his private practice. Indisputably the difference in Dr. Shuman's case is not as great, although there was an $8,000 to $10,000 diminution of earnings as compared to the years immediately prior to his heart attack. But to make the question whether an insured is engaged in a gainful occupation for which he is reasonably fitted turn simply on the quantum of money received by him would be to adopt an oversimplified and arbitrary formula. Whether the activity of a particular insured is in fact a vocational training period, or is rather a "gainful occupation," is a question that should be answered by the jury in light of all of the facts of each case, the money received being only one fact. An insurer is not obligated under a disability policy to underwrite the costs of an insured's decision to change his employment, or his election to engage in training for a new field of endeavor where this decision is not due to the disability suffered. On the other hand, if the jury finds that the decision to become a psychiatrist was caused by *62 and was sufficiently related to the disability, we see no reason why the insured should not receive the benefits of his contract.
In the instant case we are persuaded that it was for the jury to determine whether Dr. Shuman's residency was a gainful occupation, and if not, whether plaintiff undertook the residency in psychiatry solely from choice and not because of the condition of his health. In addition, of course, the jury must determine whether Dr. Shuman is disabled to an extent which entitles him to recover on the policy. The insurance company may prove, if it can, that Dr. Shuman is well enough to be a pediatrician or to carry on a medical practice for which he is fitted other than psychiatry.
Since the trial judge entered judgment for defendant because he concluded that plaintiff was engaged in a gainful occupation, he had no occasion to go into the validity of the other defenses pleaded by the insurer, and, of course, neither do we. Nor do we find it necessary to pass on the other points raised in this appeal. We conclude only that the trial court should not have entered summary judgment. The judgment will be set aside and the cause remanded for trial.