## WABASH LIFE INSURANCE CO. *v.*
## Elza PARCHMAN

5-5308                                              458 S. W. 2d 390

### Opinion delivered October 12, 1970

*Pollard, Bethune & Cavaneau,* for appellant.

*Henry, Boyett & Morgan,* for appellee.

J. Fred Jones, Justice. This is an appeal by Wabash Life Insurance Company from a judgment of the Prairie County Circuit Court in favor of Elza Parchman on a health and accident insurance policy issued by Wabash to Parchman.

Under the policy issued to Mr. Parchman, Wabash agreed to pay him the sum of $300 per month during total disability occurring while the policy was in force. Total diability is defined in the policy as follows:

"The term 'TOTAL DISABILITY' whenever used in this policy shall mean the complete inability of the Insured to engage in any gainful occupation for which he is qualified by education, training or experience."

Mr. Parchman is a self-employed farmer who, in partnership with his brother-in-law, farms over 400 acres in soybeans. On March 3, 1968, he injured his left thumb while stacking wood on his farm. He was seen by Dr. Robert Bethell who, on March 18, 1968, filled out a medical report in questionnaire form as follows:

"1. Date of accident: 3-3-68
Please describe injury received: Struck (L) Thumb. General swelling of tenderness over carno mila carxl point Xray reveal no fracture.
2. What operation was performed if any? None. Charge for surgery? None.
If laceration, number of sutures needed? None.
3. Please give dates you attended patient for this injury. Office: 3-4-11-18-1968.
4. How long was, or will, patient be TOTALLY disabled:
From 3-4-1968 to 3-18-68.
5. When was, or will, patient be able to resume any part of his work? 3-19-1968.
6. Has patient any chronic or constitutional disease, physical defect or deformity? No."

Mr. Parchman filed claim for two weeks' total disability benefits under the policy and apparently, upon the request of Wabash for more detailed medical information, Dr. Bethell wrote to Wabash as follows:

"Mr. Elzie Parchman was seen in my office on 3-3-68 with pain in his left thumb and hand. Examination revealed moderate soft tissue swelling of thumb and weakness of the left thumb on flexion and extension movements. There was point tenderness over the carpo-metacarpol joint of the thumb.

Ex-rays of the thumb and hand were essentially normal, however it was my impression that this represented an early rheumatoid arthritis or a tendonitis.

Mr. Parchman was instructed to use hot soaks

q.i.d. He was placed in anti-inflammatory medication and his hand was practically [sic] splinted with an elastic bandage.

He returned on 3-11-68 for follow up. Most of the swelling had subsided. He was maintained on the same medication and rechecked on 3-18-68 at which time he was essentially asymptomatic. He was discharged at that time to return to light work. He was given 2 weeks total disability from 3-3-68 to 3-18-68."

Upon receipt of this report Wabash denied the claim for total disability by letter to Mr. Parchman dated May 9, 1968, as follows:

"Mr. Edmiston of our Memphis office has just forwarded to us the statement received from Dr. Robert Bethell in reference to the recent thumb injury you suffered.

We do want to let you know that we are not doubting the doctor's diagnosis and treatment, nor the fact that you did suffer the injury. However, we cannot agree that this injury would result in total disability.

To clarify this point, total disability as defined by your policy means the complete ability [sic] to engage in any gainful occupation. We do believe that the temporary loss of the use of one hand would prevent you from performing some of the regular occupational duties in which you had previously been engaged.

It was on this basis that we allowed the non-disabling injury in the amount of your doctor's bills as indicated by you on a previous report."

When his claim for two weeks' *total* disability was denied by Wabash, Mr. Parchman stopped payment on a check he had mailed to Wabash in payment of a

quarterly premium which fell due on his policy during the two weeks disability period. Sometime after payment on the check was stopped by Mr. Parchman, he fell from a tractor and sustained a broken leg. He made claim for 60 days' total disability benefits because of this second injury, and this additional claim was denied by Wabash on the ground that the policy had lapsed for nonpayment of premium.

In October 1968, Mr. Parchman filed his suit on the policy alleging total disability from March 3 to March 18, 1968, because of the injury to his thumb, and total disability for a period of 60 days because of his leg injury. He alleged that when he sustained his second injury and disability, Wabash owed him for the two weeks' total disability, which amount was more than sufficient to pay the delinquent premium he owed Wabash; and he prayed judgment for the full amount of benefits for both periods of total disability, less the amount he owed Wabash on his past due quarterly premium.

In its answer Wabash denied that Mr. Parchman was totally disabled within the terms of the policy because of his thumb injury and denied liability for the 60 day period of disability because the policy had lapsed for nonpayment of premium.

The case was tried before the trial judge sitting as a jury. The trial court found that Mr. Parchman was totally disabled for 14 days because of his thumb injury; that Wabash should have paid the insurance premium out of the amount it owed Mr. Parchman and judgment was rendered for Mr. Parchman in the amount of $619.75, together with $250 attorney's fee, 12% penalty and costs. On appeal to this court Wabash relies on the following points for reversal:

"The decision of the trial court that the insured is entitled to total disability benefits for the 14-day period following his injury of March 3, 1968, is not supported by substantial evidence.

In the alternative, even if it be said that such decision is supported by substantial evidence, it should be reversed as being against the preponderance of the evidence.

The trial court erred in its finding that the disability policy was in effect on June 17, 1968, the commencement of appellee's second alleged period of total disability."

Since we are of the opinion that the judgment must be reversed under the appellant's first point, we do not reach the second and third points.

The extent of Mr. Parchman's disability during the two weeks period following his thumb injury was the all important question before the trial court, and the substantiality of the evidence that the disability was total is the all important question on this appeal. There is not one word of testimony, by deposition or otherwise, in the record before us as to the extent of Mr. Parchman's disability. The trial court made findings of fact, in part, as follows:

"The only evidence before the court as to the -extent of plaintiff's disability for the two weeks period is that contained in the stipulation. There is nothing in the stipulation to contradict Dr. Bethell's diagnosis of total disability for 14 days. There is no suggestion that the plaintiff did any work or carried on any activities in connection with his business during this 14 day period."

We have closely examined the five pages of stipulation appearing in the record in this case and we are forced to the conclusion that there must have been more to the stipulation as presented to the trial court than appears in the record before us on appeal. This is not a workman's compensation case where disability is defined by statute and more or less made binding on the employer and compensation insurance carrier by orders of the attending physician to the injured employee and

accepted in evidence by the parties in the form of a written report. The stipulation between counsel simply set out the facts in detail, and excerpts from the stipulation, in so far as it has to do with the extent of disability during the two weeks following Mr. Parchman's thumb injury, are as follows:

"The parties hereto stipulate and agree that: On March 3, 1968, Mr. Parchman sustained an injury to his left thumb while stacking wood on his farm. He was seen and treated by Dr. Robert Bethell, Des Arc, Arkansas, on March 4, March 11 and March 18, 1968.

Dr. Bethell and Mr. Parchman completed and signed a claimant's statement on March 18 and March 19, 1968, respectively, and forwarded the statements to the Wabash Life Insurance Company. Mr. Parchman's Statement is attached as Exhibit No. 3 and Dr. Bethell's Statement is attached as Exhibit No. 4.

\*　\*　\*

By letter dated May 3, 1968, and in response to the inquiry initiated by Mr. Branscum, Dr. Robert Bethell forwarded to the Wabash Life Insurance Company his opinion of the injury to Mr. Parchman's left thumb. Dr. Bethell's letter indicated Mr. Parchman was given a two weeks' total disability from March 3, 1968, to March 18, 1968. A copy of Dr. Bethell's letter is attached as Exhibit No. 8."

There is nothing in this stipulation pertaining to the truth of any matter contained in the stipulated exhibits.

Exhibit No. 3 is the executed claim form Mr. Parchman filed with Wabash in which he states that he did no work but was totally disabled from 3-4-1968 to 3-18-1968, and exhibits No. 4 and No. 8 are Dr. Bethell's report and letter above set out. The stipulation that Mr. Parchman *stated* he was totally disabled, and that Dr.

Bethell *indicated* in a letter he wrote to Wabash that Mr. Parchman "was given two weeks total disability" falls far short of substantial competent evidence that Mr. Parchman suffered two weeks' total disability.

The law is so well settled that Mr. Parchman bore the burden of proving his disability and the extent of it that citation of our past decisions on this point is not necessary. If Mr. Parchman was totally disabled following the injury to his thumb, it was the injury that gave him the disability and not Dr. Bethell. Dr. Bethell did not say in his report, or his letter, what Mr. Parchman's occupation is, and there is nothing in the record that would indicate that he even knew. There is nothing in the record to indicate that Dr. Bethell ever saw the insurance policy under which total disability was claimed, or that he ever knew, or was told, what the policy contract contained as to "total disability."

The insurance contract says that total disability means "the complete inability of the insured to engage in any gainful occupation for which he is qualified by education, training or experience." This court has many times had occasion to interpret total disability definition clauses in insurance policies. In *Travelers Ins. Co.* v. *Thompson,* 193 Ark. 332, 99 S. W. 2d 254, we said:

> "Total disability is generally regarded as a relative matter, which depends largely on the occupation and employment in which the party insured is engaged. Provisions in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business, do not require that he should be absolutely helpless, but such disability is meant which renders him unable to perform all the substantial and material acts of his business, or the execution of them in the usual and customary way."

In *Aetna Life Ins. Co.* v. *Orr,* 205 Ark. 566, 169 S. W. 2d 651, is found the following language:

"In passing on the question of total disability, consideration must be given not only to the specific wording of the policy, but also to the business or profession of the insured when the policy was issued and when the claim arose."

In *Equitable Life Assur. Soc.* v. *Bagley*, 188 Ark. 1009, 69 S. W. 2d 394, the policy definition of total disability was as follows:

"Disability is total when it prevents the insured from engaging in any occupation for remuneration or profit."

In that case this court said:

"This identical clause, as well as clauses of similar import contained in accident indemnity policies, has been construed by this court as meaning such a disability as renders the insured unable to perform the substantial and material acts of his business in the usual and customary way, and not such disability as renders him absolutely helpless. *Travelers' Protective Association of America* v. *Stevens*, 185 Ark. 660, 49 S. W. (2d) 364, and cases therein cited on the point."

See the numerous cases listed under key No. 524, vol. 10 A, West's Ark. Digest, under "Insurance" at p. 369, et seq.

Mr. Parchman failed to prove the extent of his disability. There is nothing in the record from Mr. Parchman, or anyone else, as to what Mr. Parchman could, or could not, do. Mr. Parchman did not testify in his own behalf and Dr. Bethell did not say in either of his reports what Mr. Parchman could, or could not, do. He simply described the condition found and treatment rendered in and to Mr. Parchman's left thumb, and stated: "He was given two weeks total disability from 3-3-68 to 3-18-68." In the same letter-report in which Dr. Bethell stated that Mr. Parchman was *given* two

weeks' total disability from 3-3-68 to 3-18-68, Dr. Bethell stated that on 3-11-68 most of the swelling had subsided and that on 3-18-68 Mr. Parchman was essentially asymptomatic. We are unable to recognize Dr. Bethell's two reports as substantial evidence of total disability within the meaning of the insurance contract, and aside from these reports of Dr. Bethell, there is no proof in the record that Mr. Parchman was disabled at all following the injury to his thumb on March 3, 1968.

The judgment is reversed and this cause dismissed.