**Paul HOFFERT, Plaintiff,**

v.

**COMMERCIAL INSURANCE COMPANY OF NEWARK, NJ a/k/a Commercial Life Insurance Company, Defendant.**

**No. 89 Civ. 6929 (GLG).**

United States District Court, S.D. New York.

June 20, 1990.

---

Rende, Ryan & Downes, White Plains, N.Y. by Wayne M. Rubin, of counsel, for plaintiff.

Roemer and Featherstonhaugh, New York City by David J. Finkler, of counsel, for defendant.

## OPINION

GOETTEL, District Judge:

In this suit upon a disability policy the parties cross-move for summary judgment, stating that there are no material facts in controversy. The following facts do not appear to be disputed.

## I. FACTS

The plaintiff is a physician licensed to practice medicine in the state of New York whose practice, until the events giving rise to this cause of action, was almost exclusively limited to general and vascular surgery. He has a number of disability insurance policies, including two issued by the defendant corporation.[1] The policy contested in this suit was issued in December 1976 through a medical association and bears policy number GBD 32232. The pertinent policy provision calling for the payment of disability benefits is included in the Permanent Total Disability Rider and provides that:

> If disability, commencing within 180 days from the date of accident and continuing for twelve months, shall prevent the Insured from engaging in any occupation or employment for which he is fitted by reason of education, training and experience for the remainder of his life, such disability shall be deemed Permanent Total Disability, and the Company will pay the Permanent Total Disability Benefit which shall be equal to the difference between the Principal Sum and the total of any other payments made under SECTION A on account of such injuries.

The policy has a maximum benefit payable of $120,000.

---

1. Pursuant to one of the policies held with the defendant, which has a different disability provision from that in the contested policy, the defendant has been paying the plaintiff $300 per week.

On February 15, 1987, the plaintiff suffered an injury to the rotator cuff of his right shoulder which caused him difficulty in performing surgery. Consequently, the plaintiff underwent arthroscopic surgery on July 14, 1987 and more extensive surgery in October of that same year. The shoulder surgeries were not entirely successful and have limited the mobility of the plaintiff's right arm to such an extent that he is no longer able to perform surgery.

The defendant acknowledges that the plaintiff made a timely submission of the notice of his injury and proof of claim and that the plaintiff's disability arises from the accident and surgery described above. The defendant's rejection of the claim is based on its contention that while the plaintiff can no longer perform surgery, he is capable of performing other work of a physician and surgeon.

The plaintiff was 65 years old at the time of the surgery and is presently 67. He has not sought medically-related employment since October 1987. The plaintiff was examined by a private vocational specialist, retained by the defendant, who has concluded that, in light of his education, training, and experience, the plaintiff is able to perform various medical/surgical occupations. The plaintiff denies the availability of certain of the suggested employments. More important, both sides agree that any employment the plaintiff could obtain would produce earnings of less than one-half of that which the plaintiff enjoyed prior to his disability and perhaps as little as one-quarter.[2] Nonetheless, the defendant argues that, under the provisions of this policy, whether the plaintiff will suffer a severe reduction in his income is irrelevant, provided that he is still able to work as a physician.

## II. LAW

■ This court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.[3] Because this is a diversity case, all substantive legal issues are governed by New York law.

Disability insurance policies generally fall into one of three categories. At one extreme is a general disability clause that withholds compensation unless the insured is unable to perform *any* work or engage in *any* occupation. At the other extreme is an occupational disability clause which requires only that the insured be unable to perform the duties of *his own* occupation.[4] *See* 15 *Couch on Insurance 2d*, § 53.48. Between these two extremes are policy provisions such as the one at issue herein in which the determinative criterion is the ability to engage in comparable employment for which the insured is "fitted by reason of education, training and experience." The critical word in the above sentence is "fitted." While the word has several possible meanings, the primary meaning, as defined in *Websters' Third New International Dictionary*, is "to be suitable for or to: answer the requirements of." *Id.* at 859. Strangely, the courts of New York have never interpreted a disability policy containing this precise provision.

While New York courts have not interpreted the "fitted by reason of education, training and experience" policy provision, courts of many other states have.[5] In

2. In the four years preceding his disability, the plaintiff's net profit from his medical practice averaged in excess of $157,000 a year.

3. The plaintiff is a citizen of New York and the defendant of New Jersey.

4. The policy held by the plaintiff on which the defendant is paying benefits is such a policy.

5. It appears that this type of provision came into use because the courts of many states were engrafting such interpretations into the more restrictive policies which covered only disability from any occupation. *See, e.g., Kooker v. Benefit Ass'n of Ry. Employees*, 246 N.W.2d 743, 745

(N.D.1976); *Dunlap v. Maryland Casualty Co.*, 203 S.C. 1, 25 S.E.2d 881 (1943). This was even more certain to occur if the policy used the disjunctive "regular occupation or any gainful occupation for which he is reasonably fitted." *See Mason v. Loyal Protective License Co.*, 249 Iowa 1167, 91 N.W.2d 389, 392 (1958) (any occupation must reasonably approximate the same livelihood as the insured's regular occupation). Of course, the exact language of the policies using this intermediate approach vary quite a bit. Some of them insert the phrase "each and every" before referring to the occupation for which the insured is reasonably qualified.

*Continental Casualty Co. v. Novy*, 437 N.E.2d 1338 (Ind.App.1982), for instance, a physician who could no longer participate in the general practice of medicine but who had obtained a position as a staff physician at a V.A. Hospital was found not disabled since he was employed in a position for which he was reasonably qualified by reason of his education, training or experience.[6] *Id.* at 1352.

Most doctors are licensed as "physicians and surgeons" but generally become one or the other. At least one court has held that, under an "any occupation" disability provision, the doctor must be disabled from being either a surgeon or a physician. *Aetna Life Ins. Co. v. Orr*, 205 Ark. 566, 169 S.W.2d 651 (1943). In addition to selecting either surgery or medicine as their principal pursuits most doctors specialize even further. For example, the plaintiff had a sub-specialty in vascular surgery. These specialties are generally more lucrative than a general medical practice. However, they are obtained only at the expense of substantial training and residencies. In the case of *Shuman v. National Casualty Co.*, 88 N.J.Super. 57, 210 A.2d 641 (1965), a pediatrician suffered a heart attack, preventing him from continuing in the rather rigorous care of children. He then took a hospital residency for training in the field of psychiatry which paid only $12,000 a year, much less than he had been earning. The court held that it was an issue of fact for the jury to determine whether this residency was a gainful occupation under a policy provision requiring that he be "disabled from engaging in any gainful occupation for which Insured is reasonably fitted or qualified" and whether the residency was undertaken solely from choice or as a result of his health. *Id.* 210 A.2d at 644.

Some policies do not define the occupation that the insured must be totally disabled from engaging in. For example, in *Ratchford v. Mutual Benefit Health and Acc. Ass'n.*, 23 Conn.Sup. 51, 176 A.2d 589 (1961), an oral surgeon, whose disability prevented him from pursuing oral surgery or general dental practice, was found to be disabled under a policy requiring simply "total disability" even though there were other occupations for which he was reasonably fitted by reason of his training and experience. The court noted that the policy was issued to a professional group, as it was in this case, all of whose members had a specific occupation. Consequently, it held that the total disability requirement should be interpreted as referring to the profession in which he was engaged when insured. *Id.* 176 A.2d at 593–94.

While the New York cases do not deal directly with the type of policy language at issue herein, they nevertheless afford some insight into how the New York courts would interpret the plaintiff's policy. In *Niccoli v. Monarch Life Ins. Co.*, 70 Misc.2d 147, 332 N.Y.S.2d 803 (1972), *aff'd*, 45 A.D.2d 737, 356 N.Y.S.2d 677 (2d Dep't 1974), *aff'd*, 36 N.Y.2d 892, 372 N.Y.S.2d 645, 334 N.E.2d 594 (1975), the insured, who specialized in gynecological surgery and obstetrics, suffered a heart attack. He thereafter accepted employment as the Director of Family Planning and Sex Education at a hospital in which he made more money than he had before. Nevertheless, the court held that he was entitled to recover under a policy insuring him against "complete inability to engage in regular occupation." *Id.* 332 N.Y.S.2d at 808. On the other hand, an insured doctor who had a dual specialty, a private practice in opthamology and work as a professor and staff physician at a college of medicine and a V.A. hospital, and lost only his private practice, was not entitled to recover. *Taterka v. Nationwide Mut. Ins. Co.*, 91 A.D.2d 568, 457 N.Y.S.2d 53, 55 (1st Dep't 1982), *aff'd* 59 N.Y.2d 743, 463 N.Y.S.2d 441, 450 N.E.2d 247 (1983).

Many of the New York decisions are fact intensive, such as *McGrail v. Equitable Life Assurance Soc.*, 292 N.Y. 419, 55 N.E.2d 483 (1944). The insured, a 55 year

---

**6.** Note that the policy language in that case used the word "or" between "training" and "experience," apparently making the three criteria separate so that if the occupation is suitable under any of them the insured would not be totally disabled. The policy here puts the word "and" between "training" and "experience," indicating that all three criteria must be met.

old physician and surgeon, suffered a dislocated shoulder, coronary thrombosis and neuritis as a result of a fall. The court upheld the jury verdict for the insured on a policy that covered disabilities preventing the performance of "any and every" duty pertaining to his occupation. Although in some isolated instances he could perform some such duty and despite his stated claim of only partial disability, the court found persuasive the fact that 90% of the insured's work had been in surgery—a practice that was no longer available to him.

The New York case which seems closest to this action is *Littman v. National Cas. Co.*, 48 Misc.2d 881, 266 N.Y.S.2d 183 (Civ. Ct.1966). The physician in that case had a medical society disability policy and filed for benefits under circumstances similar to that involved in this case. The precise language in that policy was "engaging in any gainful occupation for which the insured is reasonably fitted or qualified." *Id.* 266 N.Y.S.2d at 187. He had been in the general practice of medicine but had become deaf. He attempted to retrain himself in allied specialties but was unsuccessful in completing the training due to his hearing loss. The court took note of the fact that the policy had been issued to members of a medical society whose members

> were members of a particular group with special training and skill. The insurance company, together with the insured, intended this policy to be limited to that particular area of endeavor. This unique situation indicates clearly that the words "any gainful occupation for which the insured is reasonably fitted or qualified" be limited to the allied fields in which the insured received training, in this particular case the allied medical fields.

The nature of the disability combined with the age and training of the plaintiff, plus the showing by the plaintiff that he made good faith attempts to retrain himself in other medical specialties, clearly

indicates to the court that the plaintiff has satisfied the requirements of the extended professional disability contract. *Id.* at 187–88.

Interestingly, there is a Second Circuit case in this area, *Dixon v. Pacific Mut. Life Ins. Co.*, 268 F.2d 812 (2d Cir.1959), which involved a policy insuring a physician against disability from performing the duties of his occupation. The plaintiff had dermatitis on his hands which prevented him from performing surgery. Even though he found subsequent employment as a hospital superintendent, the court determined that he was entitled to recover. The Second Circuit construed "the duties of his occupation" as the physician's surgical specialty and not simply any employment requiring a physician's learning. "If [the insured's] occupation has become that of a recognized specialist in surgery and he suffers from a physical impairment . . . resulting in the forced discontinuance of his practice for all practical purposes there is total disability. He can no longer pursue his real occupation." *Id.* at 815.[7]

Unquestionably, the contested policy herein requires that alternative employment be suitable. The ultimate question thus becomes: "suitable in what respect?"[8] While one old New York case did equate the word "fitted" with "qualified," *Waldman v. Mutual Life Ins. Co. of N.Y.*, 252 A.D. 448, 299 N.Y.S. 490 (2d Dep't 1937), in light of the total phraseology used here, we view the requirement as requiring far more than qualifications. As a licensed physician and surgeon, even with his substantial physical impairment, he is "qualified" to do a number of medical jobs. The issue is whether he is "fitted by reason of education, training and experience" to them.

The defendant's vocational specialist suggested a series of potentially suitable positions for the plaintiff. First, the plaintiff might become a medical professor. The

---

7. The policy language in *Dixon* parallels that in defendant's other policy on which it is presently making payments to the plaintiff.

8. Were we to find the policy language ambiguous it would obviously be construed against the insurer who drafted it. *Acorn Ponds, Inc. v. Hartford Ins. Co.*, 105 A.D.2d 723, 481 N.Y.S.2d 392 (2d Dep't 1984).

plaintiff has instructed surgical residents at several hospitals, including the Yonkers General Hospital, where he was Chief of Surgery. He was, however, a clinical professor. Thus, the residents he was instructing would observe him in surgery and he would explain the techniques involved; something he can no longer do. Second, the vocational specialist proposed employment as a surgical consultant to patients seeking second opinions. The plaintiff did do a limited amount of consulting work prior to his disability but it is clear that the availability of such work is not great. The parties agree that although the plaintiff could be trained in areas of non-surgical medical practice, this would take some period of time and, at least at the beginning, would generate substantially less earnings than he realized as a surgeon.[9]

An obvious factor impacting on the plaintiff's ability to obtain comparable employment is his age. Were the plaintiff a younger person he would have substantially more incentive to retrain himself in other areas of medical practice in which he would be physically capable. However, he was at normal retirement age at the time of his accident. It would be too much to expect him to spend several years in residency to acquire the skills to start a new career which he could probably not pursue for many more years.

■ Clearly, any employment that the plaintiff might be able to obtain would be much less lucrative than his previous work. The defendant, however, argues that the monetary recompense of the employment is irrelevant to whether it is something to which the plaintiff is "fitted by reason of education, training and experience." The plaintiff argues that income reflects the status of the position and that the suitabili-

ty of other employment must be measured financially.

At bottom then, the question is whether the practice of medicine is a profession or a business, since clearly the plaintiff can serve certain of the medical needs of the public albeit at a less remunerative level. We regretfully conclude that medicine, like law, has become more of a business than a profession so that economic recompense is a primary consideration.[10] Moreover, it is clear that whatever license the plaintiff holds, he is, by his training and experience, a surgeon. Since it is uncontested that he can no longer perform surgery, there is no other occupation for which he is fitted.

Under all the foregoing circumstances, we conclude that the plaintiff is totally disabled under the policy in question and is entitled to recover $120,000, plus interest from July 14, 1988, together with the costs and disbursements of this action. The clerk will enter judgment accordingly.

SO ORDERED.

---

9. During his early residency, more than forty years ago, the plaintiff had some training in radiology. However, he would require substantial current training in that area before he could become competent in radiology at this time.

10. We acknowledge that this conclusion relates to an issue of fact on which no evidence has

been presented. However, both sides have eschewed any interest in presenting any evidence. Moreover, it is clearly an issue as to which opinions could diverge and very little would be accomplished by hearing the opinions of interested parties.